CocA-CoLA BOTTLING WORKS *v.* SULLIVAN.

(*Nashville,* December Term, 1941).

Opinion filed February 14, 1942.

T. P. HENDERSON, of Franklin, and ARMISTEAD, WALLER, DAVIS & LANSDEN, of Nashville, for plaintiff in error.

WALKER & HOOKER, of Nashville, and E. W. EGGLESTON, of Franklin, for defendant in error.

MR. JUSTICE CHAMBLISS delivered the opinion of the Court.

This is another of those numerous cases in which recovery is sought against a Bottling Company, for injury alleged to have been suffered by a drinker of a bottle of

Coca-Cola, which contained harmful foreign matter. In some of the reported cases this was an insect, in others a mouse, again a cigar stub, or, as in the instant case, a bit of glass. The courts have been called on to decide questions of fact—whether (1) plaintiff found the matter in the bottle, as alleged; (2) if injury was suffered from this cause and its extent; (3) whether the foreign matter was put, or left, in the bottle by the defendant bottler, or inserted, or entered, subsequently. In two cases decided by this court, reported in the same volume, *Boyd* v. *Coca-Cola Bottling Works,* 132 Tenn., 23, 177 S. W., 80, 2 A. L. R., 1364, and *Crigger* v. *Coca-Cola Bottling Co.,* 132 Tenn., 545, 179 S. W., 155, L. R. A. 1916B, 877, Ann. Cas. 1916E, 1092, certain rules have been laid down for determining the liability of the bottler in this class of cases.

In the Boyd case (opinion by Mr. Justice GREEN), reversing the trial court, it was definitely held that want of privity of contract between the bottler and the plaintiff, a purchaser from an intermediate dealer, was no defense, that "this liability does not depend on contract or privity, but arises from a breach of the legal duty" [132 Tenn., 23, 177 S. W., 81, 2 A. L. R., 1364] to exercise care in the preparation of medicines, foods and beverages otherwise dangerous to human life. Said the Court, "Upon a person who undertakes the performance of an act, which if not done with care and skill will imperil the lives of others, the law imposes the duty of exercising the requisite care and skill. In such matters such a person is liable to others suffering from his negligence." This opinion is approved and quoted from at length by the Annotator in 17 A. L. R., 697. In this case the facts do not appear to have been in dispute—either that the plain-

tiff suffered the injury, or that the bottle came from the defendant in its hurtful condition. Indeed, the negligence of the defendants was, in effect, conceded.

In the *Crigger case* [132 Tenn., 545, 179 S. W., 156, L. R. A. 1916B, 877, Ann. Cas., 1916E, 1092] (opinion by Special Justice FANCHER) the Court dealt with the question, "whether there is an implied warranty on the part of the Coca-Cola Bottling Company, which results in favor of the ultimate consumer, regardless of any question of negligence." It was quite definitely held that no implied warranty exists in these cases as a predicate for recovery, which is according to the weight of authority (see 22 Am. Jur., 892, citing this among other cases) but that the liability to the consumer, in the absence of contract, rests on negligence in the preparation or putting out to the public of the article, of which there must be proof.

We quote from page 552 of 132 Tenn., page 157 of 179 S. W., L. R. A., 1916B, 877, Ann. Cas., 1916E, 1092: "From a careful consideration of the subject, and after mature thought, we are of opinion as follows:

"1. That one who prepares and puts on the market, in bottles or sealed packages foods, drugs, beverages, medicines, or articles inherently dangerous owes a high duty to the public, in the care and preparation of such commodities, and that a liability will exist regardless of privity of contract to any one injured for a failure to properly safeguard and perform that duty.

"2. This liability is based on an omission of duty or an act of negligence, and the way should be left open for the innocent to escape. However exacting the duty or high the degree of care to furnish pure foods, beverages and medicines, we believe with Judge COOLEY, as

expressed in *Brown* v. *Marshall, supra* [47 Mich., 576, 11 N. W., 392, 41 Am. Rep., 728], that negligence is a necessary element in the right of action, and the better authorities have not gone so far as to dispense with actual negligence as a prerequisite to the liability. In fact, there is no logical basis of liability for personal injury without some negligent act or omission."

Summarizing, it will be observed that this court has laid down the following rules for guidance in this class of cases:

1. The injured consumer, purchasing from an intermediate dealer, has a right of action against the bottler for negligence in preparation or handling of the commodity, resulting in his injury.

2. The liability of the bottler is not that of a warrantor, or insurer, but rests on actual negligence in the discharge of a legal duty.

3. The legal duty thus resting on the bottler is to exercise a high degree of care for the protection of the health of the public.

With these basic principles in mind, we consider the case before us, the facts of which may be thus briefly stated:

Sullivan, a young man living in the suburbs of Franklin, purchased a bottle of Coca-Cola from W. L. Henry, who sold soft drinks at his filling station and auto repair shop. The cap was removed by the man who waited on him. He drank from the bottle and, as he finished, felt in his throat something which scratched or cut. He tried to cough it out, but could not and swallowed it. His brother was with him and noticed his coughing and heard his complaint, as did others present. He suspected that he had swallowed glass. The bottle was examined and

no particles of glass found. No breakage had taken place about the neck of the bottle, or otherwise. Later, Sullivan suffered pain and inconvenience and vomited. He first saw a local physician and then went to a hospital in Nashville, where he was attended by a surgeon who had X-rays taken which indicated glass, or some like substance, in the abdomen.

Further details are unnecessary. There is evidence to support the finding of the Court of Appeals that (1) plaintiff purchased this bottle of Coca-Cola from a dealer who regularly purchased Coca-Cola from the defendant, that (2) a particle of glass, or like foreign substance, was in the bottle, that (3) he accidentally swallowed this substance while drinking from this bottle, and that (4) he suffered injury and incurred expense as a result.

The plaintiff also introduced testimony tending to show that this bottle was not tampered with after it came into the hands of the dealer, and that it was not a substitution, but the proof was not definite as to the history of this particular bottle, and showed opportunity for tampering with its contents by third parties after it left the control of the bottler. The evidence is reviewed in more detail hereinafter.

The plaintiff offered no testimony showing negligence of the defendant in the preparation and putting out of the drink, reliance being rested on the inference presumption of such negligence arising from the finding by the plaintiff of the particles of glass in the bottle, the theory being that this circumstance spoke for itself.

On the other hand, the defendant introduced testimony tending to show exercise of a high degree of care in its process of manufacturing.

The case was submitted to the jury with general in-

structions that, if the jury found from a preponderance of the proof that the presence of this foreign substance in the bottle was due to the negligence of the defendant Bottling Company, they should find for the plaintiff. The jury found for plaintiff and fixed his damages at $800. On a motion for a new trial, the trial court held that he had erred in refusing to sustain a motion for peremptory instructions, made for the defendant at the close of the evidence, and dismissed the suit.

The Court of Appeals reviews the facts tending to show that this particular bottle was put out by the defendant and that it contained particles of glass, and, finding "*some* evidence that the bottle *had not been tampered with,*" (the italicizing of "some" is ours) or substituted, holds the Bottling Company guilty of negligence and has reversed. We granted *certiorari* and have heard argument.

By proof of the presence in the bottle of this injurious foreign substance when it reached the consumer-plaintiff, a *prima facie,* or presumptive case of negligence on the part of *some one* was made out, under most of the authorities (some refuse to go even this far. See *Flora Ash* v. *Childs Dining Hall Co.,* 231 Mass., 86, 120 N. E., 396, 4 A. L. R., 1556, opinion by RUGG, C. J., citing cases); but it remained, in this case, as in many others, to connect with and fasten upon *the defendant* this negligence. This has been the battle ground in numerous cases in other jurisdictions (see 22 Am. Jur., pp. 890-902 for a general discussion of the subject, and annotations in volumes 4, 17, 39, 47 and 105 A. L. R., at pages, respectively, 1539, 695, 996, 153, 1043) and in our Court of Appeals decisions leading illustrations being *Merriman* v. *Coca-Cola Bottling Co.,* 17 Tenn. App., 433, 68 S. W. (2d),

149, DE WITT, J., and *Hoback* v. *Coca-Cola Bottling Works,* 20 Tenn. App., 280, 98 S. W. (2d), 113, FAW, J.

With variations in expression our Court of Appeals, in former opinions, approved in substance by this Court, appears to have adopted the rule—by analogy to, but not in admitted application of, that followed in cases of *res ipsa loquitur*—that where the bottle is shown, *by the weight of the proof,* to have come from the control of the defendant with the foreign substance in it, a *prima facie,* or presumptive showing of negligence on the part of the defendant is made out by the circumstances, which shifts to the defendant the obligation of disproving negligence and the question of whether the defendant has proven the exercise of a high degree of care, or has been negligent, becomes one for the jury. The theory is that, since the foreign matter is in the bottle, and the *preponderance of the proof* shows that it was there when it left the bottler, "the thing speaks for itself" to the presumptive effect, that is, affords circumstantial evidence, that the bottler has been negligent. And that, while this presumption, as in *res ipsa loquitur,* is rebuttable, it is for the jury to say whether or not, in a given case, the defendant has carried this burden, disproving negligence and showing exercise of a high degree of care.

This we now approve, but with a modification as to the quantum, or character of proof, the necessity for which arises from the case with which cases of this nature may be fabricated.

An examination of the reported cases suggests that confusion in application of the rule throwing on the bottler, or manufacturer, the burden of meeting a charge of *prima facie,* or presumptive evidence of negligence, has in part grown out of the failure to recognize differ-

ences of fact which affect the principle. At least four such essential different situations of fact are presented in the cases dealing with liability of the manufacturer to the consumer injured by foreign substances in food and drink packages. One, where the package or bottle passes directly from the agent of the bottler or manufacturer to the consumer; and, two, where the package or bottle comes from the manufacturer so sealed, as food or drink in cans, or otherwise so constructed that its contents reach the consumer without possibility of alteration by intermediate parties, for example, glass in canned pork and beans, *Campbell Soup Co.* v. *Davis*, 163 Va., 89, 175 S. E., 743. In both of these cases the facts clearly justify the application of the *res ipsa loquitur* doctrine, that "the thing speaks for itself," applied in many of the decisions, either nominally, or in effect. (Some jurisdictions limit application of this doctrine to cases of sealed cans or packages. 22 Am. Jur., 902, citing cases.) Third, where the foreign substance is so planted or imbedded in the article purchased by the consumer, that its physical location therein conclusively demonstrates its presence there when the article came from the manufacturer, as when found compressed within a plug of tobacco, or in a cake (of both of which the reported cases afford illustration.) Here, again, the thing speaks for itself, not only as to the negligence, but as to the *prima facie* responsibility of the manufacturers therefor.

But, there is a fourth class of cases, in which the instant case falls, which presents the difficulty with which we here have to deal; the cases of soft drink, or milk bottles, or the like, enclosed by caps which it is possible to remove and replace, by the use of care. We have here a distinctive element of fact which breaks the conclusive

continuity of control between the bottler and the consumer, when the physical possession has been in a third party, such as an intermediary vendor. To close this gap of control so as to make fairly applicable the rule of presumptive or *prima facie* negligence on the part of the bottler or manufacturer, we are of opinion that a higher degree of proof must be made that there has been no reasonable opportunity for tampering with the bottle, or its contents, in the interim between the physical control of the bottler or manufacturer, and that of the consumer.

■ We, therefore, hold that, before the defendant may be charged with a presumption of negligence, on the ground that the bottle with its injurious contents was put out by the defendant, with the effect of shifting to the defendant the obligation of disproving negligence, there must not only be "some" evidence (as here found by the Court of Appeals) that neither the bottle, nor its contents, had been tampered with, after it passed from the control of the defendant, but it must be made to appear, by a clear preponderance of the evidence, that there has been no such divided or intervening control of the bottle as to afford any reasonable opportunity for it or its contents to have been tampered with by another after it left the possession or control of the defendant or its agents. Until this is thus made to appear, the burden remains on the plaintiff to prove negligence on the part of the defendant. Only by exacting this higher degree of proof that the bottle has come from the defendant to the plaintiff in its harmful condition, without substitution or subsequent tampering with, can we fairly apply the presumption, or inference of negligence rule. Thus a case is made out which ties in the injury-working thing to the

control of the defendant, an essential of the *res ipsa* doctrine. •

The effect is to carry the case to the jury with the burden shifted to the defendant to prove the exercise of due care to defeat a recovery—a high degree of care in cases like this, of original drink and food packages.

It should be observed that we find no support for recognition of an inference, or presumption of negligence, and the shifting to the defendant of the obligation of disproving negligence, except in the principles of the doctrine of *res ipsa loquitur*. This doctrine was thus defined by ERLE, J., in *Scott* v. *London Docks Co.*, 2 H. & C. 596, in language that has been termed a "legal classic":

"When the thing is shown to be under the management of the defendant or his servants, and the accident is such as in the ordinary course of things does not happen if those who have the management use proper care, it affords reasonable evidence [sometimes termed 'presumptive' or 'inferential' or 'circumstantial' evidence], in the absence of explanation by the defendant, that the accident arose from want of care."

This comment from the leading case of *Peters* v. *Lynchburg Light, etc., Co.*, 108 Va., 333, 61 S. E., 745, 746, 22 L. R. A. (N. S.), 1188, well states the dual nature of the basis for the doctrine:

"The doctrine rests upon the assumption that [1] the thing which causes the injury is under the exclusive management of the defendant, and [2] the evidence of the true cause of the accident is accessible to the defendant and inaccessible to the person injured," citing authorities.

And we quote this from a late leading textbook: "The doctrine does not apply where the agency causing

the accident was not under the sole and exclusive control of the person sought to be charged with the injury." 38 Am. Jur., 997; also, see 45 C. J., p. 1214, citing many cases.

Now literal conformity to this restriction to cases of "sole and exclusive control" would obviously preclude the application of the rule in the class of cases we are considering, where the bottle passes through an intermediary vendor. We are of opinion, however, that the special conditions arising in connection with the sales of such articles, put out for human consumption, particularly the high degree of care properly exacted, and the superior accessibility of the defendant to the facts, demand a relaxation of this restriction, but with the requirement as to the character of the evidence above set forth.

The rule we adopt as to the character of evidence requisite to raise a presumption of negligence on the part of the defendant. and shift the burden and present a jury question, is that generally applied in *res ipsa loquitur*— to which, as before suggested, the circumstances in this class of cases present an analogy—thus stated, in 45 C. J., page 1212, under the subhead "Relation of Defendant to Cause of Injury," for which numerous cases are cited:

"In order to render the doctrine applicable and a presumption of negligence to attach to defendant, the nature and circumstances of the accident must be of such a character that there could be no reasonable inference but that the injury complained of was due to the negligence of defendant, or of others for whose acts he is legally responsible."

This leaves open to the plaintiff, of course, the opportunity to introduce evidence that, in any given case, or in any particular, the defendant failed to exercise a high

degree of care in the preparation and placing of its products on the market. Also, it accords with the general rule which places on the plaintiff, in an action for personal injuries, the burden of proving actionable negligence on the part of the defendant.

Now, upon examination of the record in the instant case, we find sufficient evidence that Sullivan swallowed glass, or a like foreign substance, while drinking from this bottle and was injured, and more than "some" evidence that this bottle came from the defendant and that it had not been tampered with. But we do not find that the evidence on either of these latter points is such as to meet the rule we have announced. It is largely negative in character. The dealer from whom the bottle was purchased testified that he regularly purchased all Coca-Cola sold by him from the defendant, but he declined to say that he knew this particular bottle came from the defendant. He admitted opportunities for substitution, or for tampering with his stock of Coca-Cola, and other soft drinks in bottles. He testified that customers and others sometimes helped themselves, having free and unobserved access to the receptacles where the soft drinks were kept for sale, and also to his stock room where his reserve supply of bottles was stored. This dealer, W. L. Henry, operated primarily a large automobile service station, selling gas, oil, tires and other accessories. He sold soft drinks as a side line only. His place was open all night, and many persons were in and out. Sometimes his Coca-Cola and other soft drinks were kept in his tire store room. Customers and sometimes strangers had access to all parts of his place where the soft drink bottles were kept. He said that customers frequently waited on themselves, opening and entering his ice box for this purpose. We quote:

"Q. If a person wanted a bottle of Coca-Cola he could go over there and raise the top and take it out, and go over there and pay Alley or somebody else? A. Yes, sir.

"Q. At times people did come in there and help themselves? A. Yes, sir.

"Q. And sometimes the clerks in there and employees would be busy and these people would go there and reach in there and get a Coca-Cola, an Orange Crush or something, and later on pay for it. Is that right? A. Yes, sir."

Mr. Henry purchased other soft drinks from other parties than the defendant, and it appears that the parties making these deliveries entered the premises for this purpose. The possibility that this bottle came in by mistake, or otherwise, in connection with these deliveries, is not precluded.

Mr. Alley, the assistant of Mr. Henry, who made the sale to plaintiff, testified much to the same effect. We quote:

"Mr. Alley, you stated that this cooler, in which you placed the soft drinks, was located there under that shed about how far from the sidewalk? A. Three or four feet.

"Q. And oftentimes people would come in there and help themselves to a Coca-Cola when the employees of the place were busy? A. Yes, sir.

"Q. In other words, it was a sort of Piggly-Wiggly affair, wasn't it? A. Yes, sir.

"Q. That is, you would come in, help yourself, and go around and pay the clerk? A. Yes, sir.

"Q. The clerks and employees of that garage were busy from time to time and naturally they didn't keep

their eyes all the time on that cooler up there, did they? A. No, sir.

"Q. And that was also applicable to that stockroom back there; they didn't constantly watch that? A. No, sir.

"Q. *And there were plenty of opportunities for persons to come in that stockroom there when no employees were around?* A. Yes, sir.

"Q. *And so they did have an opportunity to put a bottle in one of these Coca-Cola cases in there without being detected?* A. Yes, sir."

Enough has been said to demonstrate that the evidence, under the rule we have announced, falls far short of that degree of definiteness requisite to cast on the defendant the presumption of negligence and call for submission of the case to the jury on this issue. On the contrary, the evidence abundantly shows reasonable opportunity, by accident or design, for substitution, or for tampering with. Therefore, the trial Judge was justified in sustaining the motion for a directed verdict for the defendant.

Moreover, it appears that in this particular case the defendant, going beyond the requirements of the rule we announce, assumed the burden and apparently proved the exercise of high care, thus further justifying the result we have reached.

The judgment of the Court of Appeals must be reversed and the suit dismissed.