VERTA PHIPPS, Plaintiff-in-Error, v. JAMES H. CARMICHAEL and CHRISTINE H. CARMICHAEL, Individually and d/b/a ROYAL CROWN BOTTLING COMPANY, Defendants-in-Error.—376 S. W. (2d) 499.

Western Section. May 29, 1963.

Certiorari Denied by Supreme Court December 5, 1963.

472

Marshall L. Gerber, Gerber & Gerber, Memphis, for plaintiff in error.

James W. McDonnell, Jr., Canada, Russell & Turner, Memphis, for defendants in error.

CARNEY, J. The plaintiff below, Verta Phipps, brought suit for $10,000.00 damages against the defendants averring that on October 3, 1959, she purchased a bottle of contaminated Royal Crown Cola and that when she drank a part of the contents of the bottle she became nauseated and severely ill; that the contaminated beverage was negligently manufactured and sold by the defendants for human consumption and that her illness was the direct and proximate result of the negligence of the defendants.

After issue was joined the case went to trial before a jury. At the conclusion of plaintiff's proof the defendants made a motion for directed verdict. After argument the Trial Judge indicated an intention to sustain the motion when the attorney for the plaintiff moved for a voluntary nonsuit which was granted by His Honor the Trial Judge.

The defendants saved their exceptions and preserved a wayside bill of exceptions. The plaintiff refiled her declaration, issue was joined and the case went to trial the second time. At the conclusion of the plaintiff's proof on the second trial defendants again moved for a directed verdict which was sustained by His Honor the Trial Judge. The plaintiff has brought her appeal in error therefrom.

Plaintiff's only assignment of error challenges the correctness of the action of the Trial Judge in sustaining defendants' motion for a directed verdict. The defendants have also assigned error to the action of His Honor the Trial Judge in granting the plaintiff's motion for a voluntary nonsuit at the conclusion of the plaintiff's proof in the first trial.

■ Where there are bills of exceptions saved upon successive trials of a case below, the established practice in appellate courts is to have one hearing on the whole record of the case but to consider the several successive trials separately and in the order in which the trials occurred. Howell v. Wallace E. Johnson, Inc. (1956) 42 Tenn. App. 15, 298 S. W. (2d) 753; Thompson v. Jarrett (1957) 44 Tenn. App. 513, 315 S. W. (2d) 537.

Therefore, we consider first the assignment of error of the defendants that His Honor the Trial Judge errone-

ously permitted the plaintiff to take a voluntary nonsuit after the first trial.

■ The colloquy between the Trial Judge and the attorneys preceding and following the motion for a voluntary nonsuit was as follows:

"THE COURT: Mr. Gerber, I don't believe we have a case for the jury.

"MR. GERBER: Under the circumstances, I would like to take a voluntary non-suit at this time.

"MR. McDONNELL: If your Honor please, this has happened, I am sure, on many occasions. As I understand the rule, the plaintiff is allowed to take a non-suit up until the Court has announced its ruling. It occurs to me that the Court has announced its ruling.

"THE COURT: I have indicated very plainly what the ruling will be, but I have not gotten around to stating that I will sustain the motion.

"MR. McDONNELL: All right, sir.

"THE COURT: So, I am going to allow him to enter the non-suit, Mr. McDonnell."

Defendants' assignment of error must be respectfully overruled under the authority of Bellisomi et al. v. Kenny, 1947, 185 Tenn. 551, 206 S. W. (2d) 787. The facts in the Bellisomi case are very similar to the facts of the present case.

We turn now to the action of the Trial Judge in sustaining defendants' motion for a directed verdict at the conclusion of plaintiff's proof on the second trial. His

Honor Judge Wilson was of opinion that the case was controlled by the case of Coca Cola Bottling Works v. Sullivan (1941), 178 Tenn. 405, 158 S. W. (2d) 721, 171 A. L. R. 1200, and granted defendants' motion for a directed verdict without requiring the defendants to put on any proof.

The attorneys for plaintiff insist that Coca Cola Bottling Works v. Sullivan is not a well reasoned case because it cast too strict a burden of proof upon the plaintiff and that the ruling in the Sullivan case has been modified by subsequent decisions. Also they insist that the requirements of proof as laid down in the Sullivan case are met by the plaintiff in the present case.

The rule laid down in the Sullivan case is as follows:

"But, there is a fourth class of cases, in which the instant case falls, which presents the difficulty with which we here have to deal; the cases of soft drink, or milk bottles, or the like, enclosed by caps which it is possible to remove and replace, by the use of care. We have here a distinctive element of fact which breaks the conclusive continuity of control between the bottler and the consumer, when the physical possession has been in a third party, such as an intermediary vendor. To close this gap of control so as to make fairly applicable the rule of presumptive or prima facie negligence on the part of the bottler or manufacturer, we are of opinion that a higher degree of proof must be made that there has been no reasonable opportunity for tampering with the bottle, or its contents, in the interim between the physical control of the bottler or manufacturer, and that of the consumer.

"We, therefore, hold that, before the defendant may be charged with a presumption of negligence, on the ground that the bottle with its injurious contents was put out by the defendant, with the effect of shifting to the defendant the obligation of disproving negligence, there must not only be 'some' evidence (as here found by the Court of Appeals) that neither the bottle, nor its contents, had been tampered with, after it passed from the control of the defendant, but it must be made to appear, by a clear preponderance of the evidence, that there has been no such divided or intervening control of the bottle as to afford any reasonable opportunity for it or its contents to have been tampered with by another after it left the possession or control of the defendant or its agents. Until this is thus made to appear, the burden remains on the plaintiff to prove negligence on the part of the defendant. Only by exacting this higher degree of proof that the bottle has come from the defendant to the plaintiff in its harmful condition, without substitution or subsequent tampering with, can we fairly apply the presumption, or inference of negligence rule. Thus a case is made out which ties in the injury-working thing to the control of the defendant, an essential of the res ipsa doctrine.

"The effect is to carry the case to the jury with the burden shifted to the defendant to prove the exercise of due care to defeat a recovery,—a high degree of care in cases like this, of original drink and food packages.

"It should be observed that we find no support for recognition of an inference, or presumption of negli-

gence, and the shifting to the defendant of the obligation of disproving negligence, except in the principles of the doctrine of res ipsa loquitur. This doctrine was thus defined by Erle, J., in Scott v. London Docks Co., 2 H. & C. 596, in language that has been termed a 'legal classic':

" 'When the thing is shown to be under the management of the defendant or his servants, and the accident is such as in the ordinary course of things does not happen if those who have the management use proper care, it affords reasonable evidence (sometimes termed "presumptive" or "inferential" or "circumstantial" evidence), in the absence of explanation by the defendant, that the accident arose from want of care.' "

The Sullivan case was referred to with approval in the case of Boykin v. Chase Bottling Works, 32 Tenn. App. 508, 222 S. W. (2d) 889 and again in Coca Cola v. Crow, 1956, 200 Tenn. 161, 291 S. W. (2d) 589. Whether the rule of the Sullivan case is too harsh or too strict, is not for us to determine. The Sullivan case is still the law in Tennessee. It has not been modified and it is the rule applicable to the case at bar.

In the Sullivan case the plaintiff purchased a bottle of Coca Cola from a dealer at a filling station. The dealer regularly purchased all the Coca Colas from the defendant. A particle of glass or similar foreign substance was in the bottle which the plaintiff bought. The plaintiff accidentally swallowed the glass causing the damages for which he sued. The primary business of the dealer was operating a large automobile service station selling

gas, oil, tires and accessories. He sold soft drinks as a sideline.

His place was open all night and many persons were in and out. Sometimes the soft drinks were kept in his tire storeroom and customers and even strangers had access to all parts of the place where the soft drink bottles were kept. The dealer admitted that there were plenty of opportunities for persons to come into the stockroom when no employees were present.

Our Tennessee Supreme Court speaking through Mr. Justice Chambliss, later Chief Justice, found that the evidence showed reasonable opportunity, by accident or design, for substitution or for tampering with the bottle of Coca Cola. The Supreme Court held that the evidence was insufficient to cast upon the defendant the presumption of negligence and require submission of the case to the jury on that issue even though the plaintiff did offer some evidence of a negative character that the bottle had not been tampered with.

In the present case the only witnesses for the plaintiff were the plaintiff, her daughter, Dr. Rossett, and the bus driver, Joe Mimms. The proof is that Joe Mimms, who lives in Memphis, owned an old school bus which he used to haul cotton pickers in the fall of the year to Arkansas to one or more plantations where these pickers picked cotton during the day and were transported back to Memphis after the day's work was over. The pickers were accustomed to carrying their own lunch but Joe Mimms was accustomed to selling them cold drinks at the noon hour.

On the day in question the plaintiff and her daughter boarded the bus of Joe Mimms at or near their home in

Memphis and rode with other laborers to the cotton field over in Arkansas where the plaintiff picked cotton all morning. At the noon recess they returned to the bus and plaintiff purchased a bottle of Royal Crown Cola from Joe Mimms. Mimms uncapped the bottle and as the plaintiff was drinking a portion of the beverage her daughter noticed some foreign object in the bottle, called her mother's attention to it and upon further inspection it turned out to be a piece of wire which looked like a hairpin. The plaintiff drank no more from the bottle and Joe Mimms took the bottle from the plaintiff and put it in the back end of his bus. Plaintiff went back to the cotton field that afternoon but sometime in the middle of the afternoon became very nauseated so that she had to quit work. Upon her return home that evening she became even sicker.

The only evidence concerning the custody and where-abouts of the bottle of Royal Crown Cola from the time it left the defendants' plant until it reached the hands of the plaintiff is in the testimony of Joe Mimms. Mimms testified that he was accustomed to buying all of his soft drinks from the defendants; that these drinks were delivered by employees of defendants to his home in Memphis, Tennessee, about twice a week; that they were placed on the back porch of the Mimms home by em-ployees of the defendants and that no one else had access to the yard and back porch of Mimms except his wife and small son; that there was a six foot fence around his home with a gate that was kept locked and that the defendants' employees or other persons gained entrance to the back yard and back porch only when Mimms' wife unlocked the gate and let them in.

Mimms testified that he refilled the wooden barrel with the drinks from the back porch on the evening of October 2, 1959, and the barrel was again placed in the back end of his bus where it was locked and remained locked until the following noon. It was opened only by him to put in ice the next morning. Further Mimms testified that no one had opportunity to tamper with the bottles on his back porch after being placed there by employees of the defendant because only his wife had a key to the gate and that if anyone had come in there then his wife would have seen them. However, admittedly Mimms was not at home when the bottles including the one sold to the plaintiff were placed on the back porch by employees of the defendants. There is no clear proof as to how long the bottle bought by plaintiff remained on Mimms' back porch. Most significantly of all the wife of Mimms did not testify.

█ Thus there is a fatal hiatus or gap in the plaintiff's proof as to the custody and control of the bottle of Royal Crown Cola from the time it left the hands of the defendants' employees until it went under lock and key of Joe Mimms in the barrel at the back end of his bus. The testimony of Joe Mimms, if believed by the jury, is sufficient to negative the opportunity of anyone to substitute or tamper with the bottle of Royal Crown Cola from the time Joe Mimms put it into the barrel and locked it until he opened the barrel and uncapped the bottle of Royal Crown Cola and sold it to the plaintiff. There was no proof submitted to the jury to negative the possibility of someone substituting or tampering with the bottle of Royal Crown Cola after it was placed on Joe Mimms' back porch and before it was placed by Joe Mimms into the barrel in the back of his bus.

It must be remembered that the plaintiff has offered no direct proof of negligence on the part of the defendants. Her whole lawsuit is predicated on circumstantial evidence arising from the alleged fact that the defendants sold for human consumption a contaminated bottle of Royal Crown Cola and that the plaintiff purchased and drank from it and was injured thereby; thus was cast on the defendants the obligation to disprove the prima facie case of negligence arising from the sale.

In order to prove that the bottle was contaminated when it left the hands of the defendant it is necessary that the plaintiff prove that the bottle was contaminated when it reached her hand and to prove that it did not become contaminated after it left the hands of the defendants' employees. That is the rule of the Sullivan case. She can prove non-contamination only by proving the exclusive control of the bottle from the time it left the hands of the defendants' employees until it reached her hands and thus show lack of opportunity for contamination or substitution. Her proof does not show lack of opportunity for substitution or tampering while the bottle was on the back porch of Joe Mimms' home. The statement by Joe Mimms that if anyone had tampered with the bottle while it was on his back porch his wife would have seen them has no probative value whatsoever. Plaintiff's proof fails to meet the requirements of the Sullivan case and His Honor the Trial Judge was correct in so holding.

Solicitors for the plaintiff have filed an excellent and exhaustive brief in this cause. All the cases from Tennessee and many cases from other jurisdictions dealing with purchases of contaminated bottles of soft drinks are

discussed. The argument of plaintiff's solicitors is most persuasive. However, with that part of the argument which insists that plaintiff's proof in the present case meets the requirements of the Sullivan case we must respectfully disagree. Whether the Sullivan case lays down a requirement upon the plaintiff which is too strict is not now a proper subject for debate or discussion in this court. The Sullivan case is still the law of Tennessee and this court is bound by it.

The opinion by Justice Tomlinson in the case of Coca Cola Company v. Chester Crow (1956) 200 Tenn. 161, 291 S. W. (2d) 589, which incidentally reversed a decision of this section of the Court of Appeals, sets out a set of facts which the Supreme Court of Tennessee has held do meet the requirements of proof on the part of the plaintiff in order to shift the burden of proof to the defendant manufacturer to disprove his negligence.

This Court in a recent case of Calhoun v. Coca Cola Bottling Company, Shelby Law, in an opinion by Judge Avery filed on June 29, 1962, affirmed the action of the lower court in directing a verdict against the plaintiff in an action brought for injuries suffered when part of a roach was found by the plaintiff in a bottle of Coca Cola. The plaintiff had obtained the bottle of Coca Cola from a vending machine which was kept filled by an employee of the Coca Cola Bottling Company. The vending machine was kept locked except when it was being filled and the Coca Colas were kept in a storage box prior to the time they were being loaded into the vending machines. This Court applied the doctrine and rule of the Sullivan case and in effect found that the plaintiff had failed to prove the lack of reasonable opportunity for substitution or tamp-

ering with the bottle after it left the hands of the defendant bottler.

The assignment of error must be respectfully overruled and the judgment of the lower court affirmed at the cost of the plaintiff, Verta Phipps.

Avery, (P.J.,W.S.), and Bejach, J., concur.