CARL FORD, Appellee, v. RODDY MANUFACTUR-
ING COMPANY, Appellant.—448 S.W.2d 433.

Western Section at Knoxville. September 9, 1969.

Certiorari Denied by Supreme Court December 15, 1969.

496

N. R. Coleman, Jr., Milligan, Silvers & Coleman, Greeneville, and Edward F. Hurd, Newport, for appellant.

Myers & Myers, Newport, for appellee.

MATHERNE, J. Plaintiff sued to recover damages for injuries allegedly sustained by him as the result of drinking from a bottle of Coca Cola which contained an insect or bug. The bottle of Coca Cola was bottled by the defendant.

The jury returned a verdict for $2,000 in favor of the plaintiff, and judgment was rendered in that amount. The defendant has appealed in error to this Court.

By three Assignments of Error the defendant presents the following issues: (1) There is no evidence to sustain the verdict; (2) There is no evidence of proximate negligence on the part of defendant; (3) The Trial Court should have directed a verdict for the defendant because the evidence conclusively showed that the defendant lost possession and control over the bottle of Coca Cola at least four days prior to its consumption by the plaintiff and that during the interval it was under the custody of the retailer and stored and handled in such manner as to afford ample opportunity for tampering and substitution; (4) There was no competent medical proof in the record from which the jury could have found that the ingestion of the Coca Cola was a direct and proximate cause of plaintiff's illness.

The plaintiff is an employee of Heywood-Wakefield Co. This company maintains a canteen for use by its employees. This canteen is a large room in which tables and chairs are placed, and along one side a number of vending machines are available from which soft drinks and food items may be purchased. This company rented from the defendant bottler two Coca Cola vending machines which are located in the canteen. These two Coca Cola vending machines furnish the only bottled drinks available in the canteen. All bottles of Coca Cola put in these machines were bottled by the defendant.

The defendant delivered bottled Coca Cola to the canteen on Monday of each week. These drinks were delivered in cases and the defendant's employee would stack them against the wall at the back of the canteen. Defendant's delivery man did not have a key to the vending machines and did not fill the machines with bottles of Coca Cola. An employee of Heywood-Wakefield named Ronnie Gregg had a key to the vending machines and it was his duty to refill the machines as the need arose. The assistant plant manager of Heywood-Wakefield Co. also had a key to the vending machines. These two keys were the only keys available at the location of the vending machines and both parties testified that the keys were never out of their possession, and that the vending machines were always locked. The proof is that these locks were never broken or damaged. Both of these witnesses testified that they had never tampered with a bottle of Coca Cola.

Plaintiff purchased the contaminated Coca Cola from one of the vending machines and consumed a portion of it on February 9, 1968. On the Monday preceding that

day, February 5, 1968, the defendant delivered twenty-five cases of bottled Coca Cola to the canteen of Heywood-Wakefield Co. The delivery man testified he stacked these cases against the back wall of the canteen as usual.

The canteen has three doors by which it may be entered. One door at the back of the canteen is always locked and never used. The other doors, one on each side of the room, are located toward the other end of the canteen. These two doors are open during the hours the factory is operating. During ten minute break periods and during the thirty minute lunch period employees enter the canteen through these two doors, purchase the food and drinks they desire, sit at the tables, eat and relax. During these break and lunch periods the employees are under the supervision of foremen and supervisors who have the responsibility of caring for the canteen and the equipment, and who have authority to give orders or instruction to the employees. The proof is that there was never a reported incident of tampering with bottles of Coca Cola during these periods of supervised use of the canteen.

During those hours of plant operation other than the break and lunch periods the two doors are open but employees are not supposed to enter the canteen. The path through the two doors of the canteen constitutes a short cut from one side of the plant to the other and is so used by supervisory personnel. An employee might walk through the short cut but the record is silent as to this actually happening. When visitors to the plant use the canteen they are accompanied by supervisory personnel. The physical layout of the canteen and the two doors establish that a person walking through the canteen

using the two doors would be several feet from the cases of Coca Cola stacked against the rear wall.

It is not disputed that the contents of the bottle of Coca Cola in question were contaminated. The plaintiff testified that he purchased the bottle of Coca Cola from one of the vending machines and opened it on the opener attached to the machine. Plaintiff testified that there was nothing unusual about the manner in which the bottle opened, and he immediately consumed about one-third of the contents in the bottle. It was at this time that the plaintiff noticed the foreign object in the bottle.

The defendant presented proof that there is on the market a device known as a Trenco Recap which will remove a cap from a bottle of Coca Cola, and reseat the cap on the bottle in such a way as to reseal the bottle. However, there is no proof that such device was used on the bottle in question, or at any other time in the vicinity of the canteen.

The classic statement of the doctrine of res ipsa loquitur is found in the English case of Scott v. London, etc. Docks Co., 3 H & C 596, 601 Reprint 665, as follows:

"It is an established rule, known as the doctrine of res ipsa loquitur, that, where the thing which caused the injury complained of is shown to be under the management of defendant or his servants and the accident is such as in the ordinary course of things does not happen if those who have its management or control use proper care, it affords reasonable evidence, in the absence of explanation by defendant, that the accident arose from want of due care." 65A C.J.S. Negligence sec. 220.2, p. 512.

■ An extension of this doctrine has been applied to sealed containers of food and drink like capped bottles of Coca Cola where the possession and control of the sealed container has passed from the manufacturer or processor into the hands of an intermediary vendor or retailer. This extension of the doctrine being justified on the ground that it is very unlikely the sealed container could be broken after leaving the possession and control of the manufacturer without that fact being observed by the purchaser and consumer. However, in order for the doctrine to be applicable to this situation a higher degree of proof is required of the injured consumer.

■ Before the defendant bottler may be charged with a presumption of negligence, on the ground that the bottle with its injurious contents was put out by the defendant, with the effect of shifting to the defendant the obligation of disproving negligence, it must be made to appear by a *clear preponderance* of the evidence that there has been no such divided or intervening control of the bottle as to afford any *reasonable opportunity* for it or its contents to have been tampered with by another after it left the possession or control of the defendant or its agents. Coca-Cola Bottling Works v. Sullivan (1942) 178 Tenn. 405, 158 S.W.2d 721, 171 A.L.R. 1200 (Emphasis added).

Until the foregoing is thus made to appear, the burden remains on the plaintiff to prove negligence on the part of the defendant. Where the sealed bottle is sold by an intermediary retailer, it is only by exacting this higher degree of proof that the bottle has come from the defend-. ant to the consumer in its harmful condition, without substitution or subsequent tampering with, can the court fairly apply the presumption or interference of negligence rule. Sullivan case, supra.

The ruling in the Sullivan case has been consistently followed in this State. Boykin v. Chase Bottling Works (1949) 32 Tenn.App. 508, 222 S.W.2d 889; Coca-Cola Bottling Works, Inc. v. Crow (1956) 200 Tenn. 161, 291 S.W.2d 589; Phipps v. Carmichael (1963) 52 Tenn.App. 471, 376 S.W.2d 499.

The question before the Court is whether there was "reasonable opportunity" for someone to have tampered with the bottle of Coca Cola or its contents after it had left the possession and control of the defendant bottler. If there was such reasonable opportunity for the bottle to have been tampered with the case should not have gone to the jury.

In the case of Coca-Cola Bottling Works, Inc. v. Crow, supra, it was held that it is not necessary for the plaintiff to eliminate every remote possibility of tampering with the bottle in order to meet the requirements of the Sullivan case, but that the requirement is satisfied if the evidence is sufficient to eliminate "the probability of anything being done to, or changes in the condition of, those bottles or their contents" after they left the possession and control of the bottler. This rule is also followed in the unreported case of Tucker v. Pepsi Cola Bottling Company, et al, Court of Appeals, Eastern Section, March 27, 1962.

The defendant seems to rely upon the fact that the cases of Coca Cola were stacked against the rear wall of the canteen where it was *possible* that some person or persons could tamper with the bottles. It is proven that the public did not have access to these bottles after they left the possession of defendant. The only people who

could have tampered with the bottles were the employees and supervisory personnel of Heywood-Wakefield Co.

In the case at bar as shown by the evidence outlined there were definite rules and regulations governing the access to the cases of bottled Coca Cola stacked in the canteen. This is a point which distinguishes this case from the case of Phipps v. Carmichael, supra, where cases of bottled Coca Cola were left on the porch of the retailer's dwelling for varying lengths of time with no control over them and no duty or regulation shown that anyone was in charge or responsible for the product. In that case the Court of Appeals in an opinion by Judge Carney held the requirements of the Sullivan Case had not been met and a directed verdict was sustained.

Also distinguished on this point is the unreported case of Calhoun v. Coca Cola Bottling Company, Court of Appeals, Western Section, June 29, 1962, where the plaintiff had obtained a bottle of Coca Cola from a vending machine which was kept filled by an employee of the Coca Cola Bottling Company. The vending machine was kept locked, except when it was being filled, and the bottles of Coca Cola were kept in a storage box outside the premises with no duty or regulation in effect whereby these stored bottles of Coca Cola were the responsibility of anyone. The Court sustained a directed verdict on authority of the Sullivan case.

We recognize that in the present case it was possible for some employee or supervisory personnel of the retailer to tamper with the bottles of Coca Cola stacked in the canteen. It is almost beyond the usual and ordinary means of retailing these bottled drinks to have a situation where this possibility would not exist. One way that a

"reasonable opportunity" to tamper can be removed is by the application of rules, and the fixing of duty on people, in such a manner that if these rules and duties are carried out there would be no "reasonable opportunity" to tamper, even though the possibility so to do continued to exist.

In the present case there is no proof but what the rules and regulations governing people who had access to the stacked cases of bottled Coca Cola were carried out. And, there is no proof but what the supervisory personnel carried out the duties imposed on them in relation to the use of the canteen and the consequent access to the bottles of Coca Cola. Under the facts of this case in order to find a "reasonable opportunity" to tamper with the bottles of Coca Cola stacked in the canteen we would have to assume the supervisory personnel did not carry out their duties, and that the employees did not obey their orders. The evidence is to the contrary. The clear preponderance of the evidence is that these duties and regulations were carried out, and there was no "reasonable opportunity" to tamper with the contaminated bottle of Coca Cola after it left the possession and control of the defendant bottler. The Trial Judge correctly denied the motion for directed verdict based upon this ground.

The primary function of the res ipsa loquitur doctrine is to enable the trial judge to determine whether the evidence entitles the plaintiff to go to the jury. Gibson County Elec. Membership Corp. v. Hall (1947) 32 Tenn. App. 394, 222 S.W.2d 689; Boykin v. Chase Bottling Works, supra. No specific act of negligence need be proven by the plaintiff. When the prerequisites of the doctrine are met the defendants must come forward with

explanatory proof, and the jury is permitted to choose the inference of defendant's negligence in preference to other permissible or reasonable inferences. Sullivan case, supra; Davis v. Sparkman (1964) 55 Tenn.App. 65, 396 S.W.2d 91; Sullivan v. Crabtree (1953) 36 Tenn.App. 469, 258 S.W.2d 782.

█ The defendant Bottler introduced proof that its bottling process was carried out under the most sanitary conditions and that the most modern equipment was used in that process. The general rule is that evidence as to the processes and procedures of the manufacturer of packaged foods is ordinarily insufficient to rebut the presumption or inference of negligence as a matter of law and prevent the issue from being one for the jury. 36A C.J.S. Food sec. 70, (2), p. 939. However there is authority in this State that explanatory evidence of the process of bottling, when considered in the light of all the proof, may be so strong as to require a directed verdict for the defendant bottler. Coca Cola Bottling Company v. Rowland (1932) 16 Tenn.App. 184, 66 S.W.2d 272, and cases there cited.

The defendant's proof established that empty bottles are picked up by defendant from its customers, washed and refilled. The washing process is rather elaborate consisting of pre-rinses, washing and rinsing of the empty bottles. These bottles come out of the washer on a conveyor line and are visually inspected by employees of the defendant. This inspection is done under bright lights and the bottles appear before the inspector twenty at a time at the rate of two hundred per minute. The proof established that these inspectors did on occasion find foreign matter in the bottle after the washing proc-

ess. After this human inspection the empty bottles are also subjected to an electronic eye inspection.

Defendant presented evidence that it had a complete water treatment plant through which city water was passed prior to being injected into the bottle. The purpose of the treatment being to remove foreign substances, purify the water and end up with a rather "flat" water which was then cooled to a required temperature and carbonated. After the water was carbonated it passed on to the filler and was injected into the bottle which had already received one ounce of syrup. The water passes into the bottle through a groove or opening on the filler mechanism which opening is 1/32nd of an inch in size. The one ounce of syrup is injected into the bottle from the drum in which it is shipped to the bottler and passes directly from the drum through a strainer into each bottle.

The proof established that after the bottle had received the one ounce of syrup and the carbonated water it continued to travel on the conveyor belt to the capper where the bottle was sealed. There was a distance of six inches along which the conveyor belt carried this upright, filled, uncapped bottle between the filler and the capper. There was no cover over the bottle during that interval. After the bottle is capped it then moves to the Shaker which shakes the bottle mixing the syrup and carbonated water.

The bottle then passes on through an RCA electronic inspection but does not receive human inspection after it is filled and capped.

We agree with the Trial Judge that the proof of the bottling process employed by defendant presented a question upon which reasonable minds could disagree,

and this explanatory evidence did not warrant a directed verdict in favor of the defendant when considered in the light of all the proof.

 Under this condition of the proof the rule is that when all the evidence is in, the question as to whether the defendant has rebutted the inference or presumption is for the jury, and the case must be submitted to the jury for it to determine where the preponderance of the evidence lies. The weight of the explanation by the defendant, like the weight of the inference raised for the plaintiff, is for the determination of the jury. Casenburg v. Lewis (1931) 163 Tenn. 163, 40 S.W.2d 1038; 65A C.J.S. Negligence sec. 220.20, p. 596.

 The above stated rule does not forestall a directed verdict where the explanatory evidence as submitted by the defendant is so strong that reasonable minds could draw but one conclusion therefrom. Poor Sisters of St. Francis v. Long (1950) 190 Tenn. 434, 230 S.W.2d 659; Coca Cola Bottling Co. v. Rowland, supra.

 Where, as here, the res ipsa loquitur doctrine is applicable the burden of proof does not shift from plaintiff to the defendant, but the defendant is required to go forward with its explanatory evidence, and from all the evidence the trier of fact may or may not accept the inference as raised by the doctrine.

The rule applicable to the jury when a case is submitted under the doctrine is stated in Sweeny v. Erving, 228 U.S. 233, 240, 33 S.Ct. 416, 418, 57 L.Ed. 815, as follows:

"In our opinion, res ipsa loquitur means that the facts of the occurrence warrant the inference of negligence, not that they compel such an inference; that they fur-

nish circumstantial evidence of negligence where direct evidence of it may be lacking, but it is evidence to be weighed, not necessarily to be accepted as sufficient; that they call for explanation or rebuttal, not necessarily that they require it; that they make a case to be decided by the jury, not that they forestall the verdict. Res ipsa loquitur, where it applies, does not convert the defendant's general issue into an affirmative defense. When all the evidence is in, the question for the jury is whether the preponderance is with the plaintiff."

This rule was quoted with approval in the case of North Memphis Sav. Bank v. Union Bridge & Const. Co. (1917) 138 Tenn. 161, 196 S.W. 492 at 498; Gill v. Brown (1914) 130 Tenn. 174, 169 S.W. 752; Memphis Street Railway Co. v. Cavell (1916) 135 Tenn. 462, 187 S.W. 179.

We therefore conclude that the facts presented questions upon which reasonable minds could differ; that it was not necessary that the plaintiff prove a specific act of negligence on the part of the defendant in order for the case to be submitted to the jury; there being no complaint directed to the admission of evidence nor to the charge of the Trial Court, the case was properly submitted to the jury; and, there is material evidence presented from which the jury could reject the explanation of the defendant and hold for the plaintiff by sustaining the inference of negligence which arose under the facts of the case.

█ Defendant's assignment that there is no competent medical evidence to support the verdict is not well taken. Plaintiff's physician, Dr. Fred Valentine, Jr. testified that he saw plaintiff on February 9, 1968 with a his-

tory of having consumed some amount of a bottled Coca Cola which contained a bug or insect. He stated plaintiff complained of abdominal pain which was associated with severe nausea, vomiting, and a sense of wanting to defecate every few minutes. This doctor diagnosed plaintiff's condition at that time as signs and symptoms of G.I. Track poisoning, and that the plaintiff was acutely ill and obviously sick. Plaintiff was hospitalized for eight days and treated with an intravenous fluid, sedation and analgesics. The doctor's final diagnosis was an acute toxic gastroenteritis probably secondary to the foreign matter in the Cola Cola consumed by the plaintiff. The foregoing constituted material medical testimony by which the jury could relate the illness to the contaminated Coca Cola.

It results that all Assignments of Error are overruled and the Trial Court is sustained. Cost in this cause is adjudged against the defendant.

Carney, P.J. (W.S.), and Taylor, J., concur.