**Lionel M. BARBEAU, Jr., Plaintiff-Appellee,**

v.

**RODDY MANUFACTURING COMPANY, Defendant-Appellant.**

**Lionel M. BARBEAU, Jr., Plaintiff-Appellee,**

v.

**WHITE STORES, INC., Defendant-Appellant.**

**Nos. 20196, 20197.**

United States Court of Appeals, Sixth Circuit.

Sept. 4, 1970.

Fred H. Cagle, Jr., Knoxville, Tenn., for Roddy Mfg. Co., Frantz, McConnell & Seymour, Knoxville, Tenn., of counsel.

Joseph A. McAfee, W. Keith McCord, Knoxville, Tenn., on brief for White Stores, Inc., Egerton, McAfee, Armistead & Davis, Knoxville, Tenn., of counsel.

Hugh W. Morgan, Knoxville, Tenn., Donald J. Ray, Tullahoma, Tenn., on brief for appellee, Kramer, Dye, Greenwood, Johnson, Rayson & McVeigh, Knoxville, Tenn., Haynes, Wiseman & Hull, Tullahoma, Tenn., of counsel.

Before WEICK, CELEBREZZE and PECK, Circuit Judges.

PECK, Circuit Judge.

These combined appeals were perfected by the two District Court defendants, the bottler and retail seller of a bottle of Coca-Cola which "exploded" in the hands of the plaintiff-appellee.

On January 29, 1968, the plaintiff-appellee (hereinafter "the plaintiff"), who was at that time a student at the University of Tennessee, purchased from the defendant-appellant White Stores, Inc. ("White Stores") a six bottle carton of Coca-Cola which had been bottled and distributed to White Stores by the defendant-appellant Roddy Manufacturing Company ("Roddy"). Some four days later, after having stored the bottles in a cabinet in his dormitory room at the university, the plaintiff attempted to open a bottle in the crack between the door jamb and the door to his room.[1]

1. Although the precise method by which plaintiff was attempting to remove the cap is not completely clear, from an examination of the record, including the

The bottle exploded sending a fragment of glass into his left eye and causing nearly total blindness in that eye.

Plaintiff's diversity action was brought and submitted to the jury on three alternative theories of recovery under Tennessee law: negligence; strict liability under § 402A of the Restatement of Torts; and liability under an implied warranty of fitness as provided by § 47–2–314 of the Tennessee Code Annotated.[2] The jury returned a general verdict against both defendants in the amount of $16,000.

The principal issues presented in this appeal concern the sufficiency of the evidence to create a jury question under the negligence and strict liability theories of recovery. It should be noted at the outset that there was no direct evidence of negligence on the part of either defendant, nor was there any direct evidence of any defect in the bottle which exploded; the bottle itself apparently was lost after the mishap.

Lack of direct evidence of negligence is no bar to recovery under the negligence theory, however. Under Tennessee law a jury would be permitted to infer negligence on the part of the defendant bottler of a beverage from the mere fact of the occurrence where a plaintiff has also shown "by a clear preponderance of the evidence, that there has been no such divided or intervening control of the bottle as to afford any reasonable opportunity for it or its contents to have been tampered with by another after it left the possession or control of the defendants or its agents," Coca-Cola Bottling Works v. Sullivan, 178 Tenn. 405, 415, 158 S.W.2d 721, 725 (1942), and that the bottle was carefully handled by all who obtained possession or control over it after it left the hands of the defendant. Coca-Cola Bottling Works v. Sullivan, *supra*; Coca-Cola Bottling Works v. Crow, 200 Tenn. 161, 166, 291 S.W.2d 589, 591 (1956); Ford v. Roddy Manufacturing Company, 448 S.W.2d 433, 436 (Tenn.App.1969); Phipps v. Charmichael, 52 Tenn.App. 471, 376 S.W.2d 499, 501–502 (Tenn. App.1963). The rule is clear, however, that the issue of negligence may not be submitted to the jury until the plaintiff has met this "high degree of proof that the bottle has come from the defendant to the plaintiff in its harmful condition." Coca-Cola Bottling Works v. Sullivan, *supra*, 178 Tenn. at 415, 158 S.W.2d at 725.

The parties agree that the above cases are the applicable Tennessee authorities on the issue of the sufficiency of evidence to create a jury question under the negligence theory of recovery. Indeed, each party contends that these cases support its arguments. A brief examination of the facts of those cases is essential to a proper understanding of their governing principles.

In Coca-Cola Bottling Works v. Sullivan, *supra*, the plaintiff was injured when he swallowed a piece of glass while drinking a soft drink bottled by the defendant. The bottle was purchased by the plaintiff from a service station operator who offered cold drinks for sale from a self-service cold drink cooler. The evidence showed that in addition to having access to the soft drinks in the cooler, the customers of the service station had access to all parts of the establishment, including those in which the soft drinks were stored prior to being

---

photographs of the door in question, it appears that he placed the cap of the bottle against the facing of the door jamb and hooked the edge of the bottle cap under the rear edge of the door. The cap was to be removed by closing the door, thereby applying leverage to remove the cap. Appellants contended that the bottle was broken by the pressure of the rear edge of the door against the neck of the bottle, stressing that the pressure against the neck of the bottle in the crack would be eighteen times that applied to the opposite edge of the door to close it.

2. The jury was instructed, however, that defendant Roddy could not be held liable under the implied warranty of fitness theory of recovery because of the lack of privity between plaintiff and Roddy.

placed in the cooler. In reversing a judgment for the plaintiff, the court held that this evidence not only failed to eliminate the probability of tampering with the bottle, but that it "abundantly" showed a reasonable opportunity for tampering with it both before and after it was placed in the cooler. 178 Tenn. at 420, 158 S.W.2d at 727.

In Coca-Cola Bottling Works v. Crow, *supra*, a soft drink bottled by the defendant and purchased from a retail grocer exploded in the hands of the plaintiff. Prior to their sale by the grocer, the bottles were stored behind a counter in the rear of his store. Other than the grocer, his son and men delivering other soft drinks, no one had access to the storage space. The court held that this evidence, along with the plaintiff's evidence of his own safe handling of the bottle, showed that there was no reasonable opportunity for the bottles to have been tampered with after they left the control of the defendant bottler. 200 Tenn. at 166, 291 S.W.2d at 590–591.

In Phipps v. Charmichael, *supra*, the plaintiff was made ill by a contaminated soft drink bottled by the defendant bottler. The retailer from whom the plaintiff purchased the drink received deliveries of soft drinks from the defendant twice weekly at his home. Upon delivery, the bottles were placed on the back porch of the retailer's house which was surrounded by a six foot fence with a gate which was kept locked. Nevertheless the trial court directed a verdict for the defendant, holding that the plaintiff had failed to show lack of opportunity for substitution or tampering with the bottles while they were stored on the back porch of the retailer's home. On appeal the judgment of the trial court was affirmed and its reasoning was approved. 376 S.W.2d 504.

In Ford v. Roddy Manufacturing Company, *supra*, the plaintiff was also made ill by a contaminated soft drink

bottled by the defendant bottler and purchased from a vending machine located on his employer's premises. Prior to their placement in the vending machine the bottles were stored in the rear of a canteen to which all employees had access at certain times of the day. However, under company rules, only two employees were authorized to handle stored bottles or to place them in the vending machine. In addition, the other employees' use of the canteen area during lunch and rest breaks was supervised. The court held that under these circumstances there was no evidence of a reasonable opportunity for tampering with the bottles; it stressed that to have found otherwise it would have had to have assumed that both supervisory personnel and employees had disregarded the specific company rules governing access to the stored bottles, although there was no evidence that they had ever done so. 448 S.W.2d at 437.

■ As becomes readily apparent from this brief review of the cases, the Tennessee courts have stressed the possibility of access to the bottles complained of during the intervening period to determine whether there has been a reasonable opportunity for tampering with or substitution of the bottles. It is only where access by third persons has been limited by physical separation or governed by regulations and supervision that the courts have found the plaintiff to have met his burden of showing that the bottle came to him from the defendant bottler in its harmful condition.[3] Comparing the facts of the present case with those of the above cases, we must conclude that plaintiff failed to meet his burden of showing "by a high degree of proof" that the bottle complained of came from the defendant Roddy to him in its harmful condition, and that the District Court erred in denying Roddy's timely motion for a directed verdict.

As stated above, plaintiff purchased a six bottle carton of Coca-Cola from

---

3. Obvious factual distinctions exist between exploding bottle cases and contaminated beverage cases, but they remain unarticulated in the Tennessee cases.

White Stores on January 29, 1968. The White Stores market from which the bottles were purchased was a self-service market in which customers took their purchases, including bottled soft drinks, from the shelves to the cashier. Coca-Cola was offered for sale by White Stores on an open display rack provided by a Roddy route salesman who visited the store three times a week and filled the display rack with the required cartons of drinks. Although January 29, 1968, was a normal delivery day, there was no evidence of when the particular carton of Coca-Cola was delivered. Thus, as in the *Sullivan* case, the customers' unlimited access to the bottles prior to their sale by White Stores provided many reasonable opportunities for the bottles to have been tampered with or their condition to have been otherwise changed. Moreover, the evidence did show that customers sometimes switch various brands of soft drinks within the cartons on display and that cartons had been knocked off the display rack and broken on past occasions. Plaintiff therefore failed to show sufficient facts to permit an inference of negligence against the defendant Roddy.

Whether evidence of safe handling by all who obtained control over the bottle complained of after it left the hands of the retail seller would permit an inference of negligence on the part of the retail seller of the bottle presents a question of greater difficulty. There appear to be no Tennessee cases permitting such an inference nor do there appear to be any cases holding the retailer liable for any breach of duty of care for failing to guard against possible tampering with the beverage bottles while they are on his shelves. Although the plaintiff argues to the contrary, we conclude that the District Court submitted the issue of negligence on the part of defendant White Stores to the jury, and for purposes of this discussion, it will be assumed that such an inference of negligence is permissible under Tennessee law. As with the issue of negligence on the part of defendant Roddy, we must conclude that plaintiff failed to meet his burden of showing that the bottle came from defendant White Stores to him at the time of the injury without a reasonable opportunity for tampering along the way, and that the District Court erred in denying defendant White Stores' timely motion for a directed verdict.

As stated, plaintiff was at the time of the accident a student at the University of Tennessee. Although he was married at the time, the marriage had not been announced, and he and his wife were therefore living in separate dormitories on the campus. On the date of the purchase plaintiff was accompanied to the White Stores by his wife and his roommate. After making the purchase, the cost of which was shared by plaintiff and his roommate, plaintiff's wife carried the carton of bottles back to the plaintiff's dormitory, and plaintiff then took the bottles up to his room. Once inside the dormitory room the bottles were placed by plaintiff in a cabinet set aside for his personal use. The bottles were not handled until the date of the accident by plaintiff, approximately four days later. However, since plaintiff and his roommate shared the cost of groceries, the roommate had both the right to and the opportunity for access to the bottles during this intervening period even though the bottles were in the plaintiff's cabinet. Furthermore, plaintiff admitted on cross-examination that other students living in the dormitory had access to his room in the intervening period at times when neither he nor his roommate were present. There is nothing to show that their access to the room was supervised in any way, and neither plaintiff's roommate nor any of the other students who may have had access to the room testified at trial. Thus we must conclude that plaintiff failed to show by a clear preponderance of the evidence that the bottle complained of came to him from defendant White Stores in a harmful condition by excluding the probability of subsequent tampering with it.

The second principal issue, concerning the sufficiency of the evidence to create a jury question under the strict liability theory of recovery, presents additional problems. There is no doubt that recovery may be sought against both the bottler and retailer of a defectively bottled beverage under section 402A of the Restatement of Torts, Olney v. Beaman Bottling Company, 220 Tenn. 459, 418 S.W.2d 430 (1967), but the sufficiency of the evidence issue presented here has not been raised or discussed in any Tennessee cases. However, the issue presented here is similar in many respects to the negligence issue discussed above. Section 402A of the Restatement imposes liability on the seller of any product in a "defective condition unreasonably dangerous to the user or consumer" irrespective of whether the defective condition resulted from any negligence on the part of the seller so long as the product "is expected to and does reach the user or consumer without substantial change in the condition in which it is sold." Thus, the plaintiff must show that the bottle was in a harmful condition at the time it left the control of the defendants, and that condition must be traceable to the defendants. Under the principles outlined above, such evidence would be sufficient to permit an inference of negligence on the part of the defendants, and it should be sufficient to permit an inference of a defect in the product at the time it left the control of the defendants. We believe that the question can therefore be narrowed to whether the plaintiff has shown by a clear preponderance of the evidence that there was no reasonable opportunity for the bottle to have been tampered with after it left the control of either of the defendants. For the reasons set forth above with respect to the issue of negligence, we hold that he did not and that the District Court erred in denying the defendants' motions for a directed verdict under the strict liability theory of recovery.[4]

The judgment of the District Court will be vacated and final judgment entered for the defendants.

4. Absent a showing of a defect in the product sold (or a showing of sufficient facts to permit the jury to infer the existence of a defect) there would be no basis for recovery against White Stores for breach of the statutory implied warranty of fitness.