T. M. HOWELL, Plaintiff-in-Error, v. WALLACE E. JOHNSON, INC., Defendant-in-Error. FLORENCE EVELYN BENNETT HOWELL, Plaintiff-in-Error, v. WALLACE E. JOHNSON, INC., Defendant-in-Error. —298 S. W. (2d) 753.

Western Section. June 21, 1956.

Petition for Certiorari denied by Supreme Court, September 3, 1956.

George A. McCormick, Memphis, for plaintiffs in error.

Thomas R. Prewitt, Memphis, Armstrong, McCadden, Allen, Braden & Goodman, Memphis, of counsel, for defendant in error.

CARNEY, J.   The plaintiffs below, T. M. Howell and wife Florence Evelyn Bennett Howell, brought separate suits for damages sustained when Mr. Howell drove his automobile into a manhole which was partially covered with dirt and which protruded about eight inches above the level of the street under construction in a new subdivision being developed by the defendant, Wallace E. Johnson, Inc.   The causes were tried jointly to a jury twice.

On the first trial the jury awarded Mrs. Howell $8,000 damages for personal injuries and Mr. Howell $303 for damages to his automobile.

A judgment was entered on each of said verdicts.   We quote the minute entry of the verdict and judgment thereon in one of the cases as follows:

"T. M. Howell
        VS.                    No. 5800 T. D.          Judgment
    Wallace Johnson, Inc.

''Came the parties herein by attorneys and also a jury of good and lawful men towit: L. W. Whitten, J. A. Crisman, W. D. Jemison, W. P. Ritchie, O. G. Johnson, W. G. King, L. W. Leggett, B. Kimes, L. V. Reames, J. H. Jones, T. D. Goldsmith, O. H. Skinner, who were heretofore duly elected impanelled and sworn, well and truly to try the issues joined and a true verdict render according to the law and the evidence, and the jury having heard the evidence and argument of counsel and received the charge of the court upon their oaths do say, 'We, the Jury find for Plaintiff and assess damage of $303.00.   J. H. Jones, Foreman.'

''It Is Therefore Considered by the Court that

plaintiff have and recover of the defendant, Wallace E. Johnson, Inc., the sum of Three Hundred Three and 00/100 ($303.00) Dollars, and all costs herein accrued for which let execution issue.''

The Trial Judge sustained a motion for a new trial in each of the cases on the grounds that the verdicts were against the weight and preponderance of the evidence.

The order granting the motion for new trial in Mr. Howell's case is as follows:

"T. M. Howell                           Order Granting Motion
     VS          No. 5800 T. D.
Wallace Johnson, Inc.                    for New Trial

''This cause came on to be heard upon defendant's motion for new trial, heretofore filed in writing, and after due consideration of the motion, which was submitted to the Court on December 17, 1954, and taken under advisement, the Court is of the opinion that said motion should be granted on the ground that the verdict of the jury is against the weight and preponderance of the evidence.

''It Is, Therefore, Ordered that defendant's motion for new trial be, and the same is hereby, granted and the verdict of the jury is set aside, to which action of the Court plaintiff excepts.

''To the action of the Court in failing to grant defendant's motion for a directed verdict, which was incorporated in said motion for new trial, defendant duly excepts.

''Each of the parties is allowed sixty (60) days from the date of entry of this order within which to present, have approved, and file Wayside Bill of Exceptions.''

The plaintiffs preserved and filed their Wayside Bill of Exceptions.

The cases were again tried to a jury and on the second trial the jury awarded the plaintiff, Mrs. Howell, $6,500 damages and awarded $300 to Mr. Howell. Judgments were entered on these two verdicts in almost identical language to that quoted above.

The Trial Judge then sustained motions for new trial by defendant in each of said causes and entered an order dismissing plaintiff's suit and in favor of the defendant in each case as follows:

"T. M. Howell
    VS        No. 5800 T. D.
Wallace E. Johnson, Inc.

"Order Granting Motion for New Trial and Entering Judgment for Defendant

"This cause came on to be heard upon defendant's motion for new trial, heretofore filed in writing, and after due consideration of the motion, which was heretofore submitted to the Court on April 29, 1955, and taken under advisement following argument of counsel, the Court is of the opinion that it should have granted defendant's general motion for a directed verdict made at the trial, and, accordingly:

"It Is, Therefore, Ordered that defendant's motion for new trial be, and the same is hereby granted, and judgment is hereby entered for defendant, at plaintiff's cost, for which execution may issue.

"Plaintiff excepts to the action of the Court in granting said motion and entering judgment for defendant thereon, and has prayed an appeal from the action of the Court to the Court of Appeals, at

Jackson, which prayer is granted conditioned upon plaintiff's filing appeal bond in forma pauperis.

"Plaintiff is allowed sixty (60) days from the entry of this order within which to file bond in forma pauperis and to present, have approved and file Bill of Exceptions.

"Harry Adams, Judge

"Minute Book 104, page 558"

The plaintiffs excepted to the action of the Trial Judge in dismissing their suits and prayed an appeal-in-error which was granted and perfected. The plaintiffs did not make a motion for a new trial following the action of the Trial Judge in granting a directed verdict in favor of the defendant.

The defendant filed a preliminary motion in this Court to strike plaintiff's assignments of error because plaintiff had not filed a motion for a new trial when the Trial Judge granted a new trial to the defendant and then directed verdicts and rendered jugment in favor of the defendant.

In an opinion of date December 7, 1955, this Court overruled the motion to strike the assignments of error and affirm the judgment. We pause here to observe that in our opinion of December 7, we incorrectly stated that judgments were not rendered on the verdicts of the jury in the first trial. This mistake was made because the transcript of the record did not originally contain copies of these judgments. The transcript was completed by the filing of copies of the minute entries showing judgments on these verdicts as above quoted.

In said opinion of date December 7, 1955, we overruled

the motion to strike the assignments of error yet we did agree with the defendant that the action of the Trial Judge on the second trial had become final and not reviewable because of the failure of the plaintiffs to file motions for new trial after the Trial Judge entered judgments for the defendant. This was on the authority of Badger v. Tennessee Electric Power Co., 12 Tenn. App. 361.

However, in these cases at bar the plaintiff had already excepted to the action of the Trial Court in granting the defendant a new trial after the first trial and the plaintiffs had preserved and filed a Wayside Bill of Exceptions.

█ The plaintiffs were not required to file motions for new trial in order to review the action of the Trial Judge granting the defendant a new trial in each case after the first trial.

1932 Code Sections 8985 and 8986 provide as follows:

"8985 4851. Motion for new trial; bill of exceptions.—Where a motion for a new trial shall be granted or refused, either party may except to the decision of the court, and may reduce to writing the reasons offered for said new trial, together with the substance of the evidence in the case, and also the decision of the court on said motion; and it shall be the duty of the judge, before whom such motion is made, to allow and sign the same, and the said judge, of either the circuit, criminal, or chancery courts, may upon application made during the term, in his discretion allow not more than thirty (30) days from and after the adjournment of the court to file same; and such bill of exception shall be a part of the

record in the case. Whenever such motion for new trial shall appear to have been filed and acted upon in the lower court, such shall be and become a part of the record without the necessity of spreading the same on the minutes or incorporation in the bill of exceptions. (1875, ch. 106; 1939, ch. 39, sec. 1; 1945, ch. 20, sec. 1.)''

''8986 4852. What errors may be assigned; new trials granted.—It shall be lawful for the appellant in such case to assign for error that the judge in the court below improperly granted or refused a new trial therein, and the appellate court shall have power to grant new trials, or to correct any errors of the circuit court in granting or refusing the same.''

In the case of Chickamauga Quarry & Const. Co. v. Pundt, 136 Tenn. 328, 189 S. W. 686, the plaintiff recovered a judgment for $8,000 in the first trial and the Trial Judge set the verdict aside and granted a new trial. The plaintiff preserved his Wayside Bill of Exceptions. In the second trial the plaintiff recovered a verdict of $9,000 and the defendant appealed.

The plaintiff did not appeal but filed the record for a writ of error and requested the Court to review the action of the Trial Judge in setting aside the verdict in the first case. Our Tennessee Supreme Court held that having preserved a Wayside Bill of Exceptions the plaintiff was entitled to have the Court review the action of the Trial Judge in the first trial even though the same plaintiff was more successful and received a larger verdict in the second trial.

In Railroad v. Scott, 87 Tenn. 494, 11 S. W. 317, 318, there were two trials. The first trial resulted in a jury

verdict for the Railroad and the Trial Judge granted the plaintiff a new trial and the Railroad preserved its Wayside Bill of Exceptions.

On the second trial the plaintiff received a judgment against the Railroad and the defendant Railroad appealed and assigned errors to the action of the Trial Judge at both trials.

■ Our Tennessee Supreme Court, in Railroad v. Scott, supra, referred to section 3836 and 3837 of the M. & V. Code which are substantially the same Code sections quoted above and announced the rule for appellate courts in appeals where there had been two separate trials as follows:

"The correct practice under the act of 1875, ch. 106, carried into the Mill. & V. Code, Secs. 3836 and 3837, authorizing a bill of exceptions to the action of the court in granting a new trial is, when the case finally comes before this court on appeal from the final judgment, at the succeeding trial, to first examine the record of the first trial, so far as it concerns the action of the court in granting the new trial. If the trial judge has committed no error in allowing such new trial, (and very much is necessarily left to his discretion, especially where he is dissatisfied with the verdict,) this court will refuse to disturb his action thereon, and will pass to the consideration of the record of the second trial. If, on the other hand, the trial judge has committed manifest error in setting aside the first verdict, this court will enter judgment on such verdict, without looking to the record of the succeeding trial or trials."

See also the following cases: Jenkins v. Hankins, 98

Tenn. 545, 41 S. W. 1028; Barnes v. Noel, 131 Tenn. 126, 174 S. W. 276; King v. Miller, 67 Tenn. 382; National Life & Acc. Ins. Co. v. Atwood, 29 Tenn. App. 141, 194 S. W. (2d) 350; City of Nashville v. Fox, 6 Tenn. App. 653, 657; General Outdoor Adv. Co. v. Coley, 23 Tenn. App. 292, 131 S. W. (2d) 305.

Therefore, we consider plaintiffs' assignments of error to the action of the Trial Judge in granting the defendant a new trial after the first trial before we consider the action of the Trial Judge on the second trial.

For the most part the evidence as to how the plaintiffs' injuries were sustained and how the accident happened was uncontradicted. About the only conflict in evidence on a material fact which we recall from a reading of the record is that the defendant's only witness, Mr. Neal, one of the vice-presidents of the defendant Corporation who had charge of the construction project, testified that the manhole which plaintiffs' car struck was plainly visible to a person driving down Milstead in an automobile.

The facts and circumstances under which plaintiffs sustained their injuries were as follows:

The defendant, Wallace E. Johnson, Inc., was the builder and developer of a residential subdivision in Memphis, Tennessee, called Avondale Park. A large number of new homes were being constructed in this subdivision. Some of the homes had been completed and ready for occupancy at the time of the accident on June 27, 1954.

Defendant ran advertisements in the local newspapers inviting the public to inspect the homes in this new subdivision as follows:

"Have you seen the Spacemaker Home in Avondale Park

It is the best buy in town—52 sold in 10 days

3 or 4 Bedrooms—Only $85.00 Cash to Veterans with low monthly notes

Drive out Summer to Avon, North on Avon to Lynn
Larry Hewlett 4-2451
Wallace E. Johnson Realty Co., Inc.
875 Rayner 2-1181—"

Lynn Avenue runs east and west in this subdivision and where it turns north it becomes Milstead Street which runs north and south.

Those portions of Lynn Avenue and Milstead Street within the subdivision were constructed by the defendant as a part of the development project. Also the defendant constructed the sewers under the streets which required manhole openings in these streets at various places. Neither Lynn Avenue nor Milstead Street had been completed and accepted by the City of Memphis at the time of the accident and therefore, were still under the control of the defendant as a part of said subdivision.

On the day of the accident, Sunday, June 27, 1954, the plaintiffs, in response to the advertisement, drove to Avondale Park to inspect or see some of the homes. They had purchased a home built by this same defendant in another part of Memphis and were interested in getting a little larger house.

They drove out Summer Avenue and then turned north on Avon, then into Lynn Avenue. Plaintiff, T. M. Howell, was driving and plaintiff, Mrs. Howell, was on the front

seat beside him. Lynn Avenue was partially paved with a coat of blacktop and gravel. Plaintiffs drove down Lynn Avenue and then into Milstead. The houses on Milstead were in various stages of construction and none were completed.

After the plaintiffs drove into Milstead Street they realized that the road was dirt and rough and after they had gone about 200 feet, Mr. Howell decided that the road was not passable and began looking for a place to turn around. About this time his automobile ran over the top of the manhole which damaged some portion of the bottom of his car.

The plaintiff, Mrs. Howell, was thrown forward, her head striking the windshield and breaking it. She sustained a concussion of the brain as well as lacerations about the head and over the eye which required many stitches. Also these injuries left some permanent scars. Further she sustained a damage to one or more vertebral discs which caused her great pain. At the time of the first trial she had been unable to work at her regular job of cashier in a local restaurant for a period of over five months with loss of earnings of approximately $1,500.

The manhole which the plaintiff struck protruded about eight inches above the level of the road and was partially covered with dirt and not very noticeable in the dirt road and neither of the plaintiffs saw the manhole before their car struck it.

There were no barricades to prevent one from driving into Milstead Street from Lynn Avenue nor were there any signs warning the public not to enter Milstead Street or notifying the public that Milstead was not to be traveled or that that portion of the subdivision was not

open for inspection. We observed above that Lynn Avenue turned north and became Milstead Street after the turn.

At the conclusion of the plaintiffs' proof in the first trial the defendant made a motion for a directed verdict which the Trial Judge considered very seriously and while he overruled the motion he made this statement:

"The Court: This accident occurred on Milstead Street north of Lynn, and it gives me some little concern as to whether this notice invited anybody to go further north than Lynn Avenue. Leaving out the first part of it, it says, 'Drive out Summer to Avon, north on Avon to Lynn.' Now, it is concerning me to some extent as to whether or not this invitation invited the public to go any farther north than Lynn. Inasmuch as it isn't described as to just what area Avondale Park includes, I think at this time I will overrule the motion and allow the defendant to proceed with the proof."

After the jury had returned a verdict for the plaintiffs the Trial Judge without further comment granted the defendant's motion for new trial on the grounds that the verdict was against the weight and preponderance of the evidence.

Substantially the same evidence was presented upon the second trial and after jury verdicts in favor of the plaintiffs had been returned and entered, the Trial Judge sustained defendant's motion for new trial and granted a directed verdict in favor of the defendant with this comment:

"The Court is of the opinion that the plaintiffs

in this case placed themselves in a position of peril, knowing and appreciating the danger, and assumed the risk, after they turned on this construction road and continued to drive thereon, knowing that it was not a proper road for use and failed to turn back before the accident, although there was ample space for turning the car before that time. The Court thinks that the plaintiffs were guilty of proximate contributory negligence as a matter of law and assumed the risk of any dangerous consequence which could reasonably be foreseen from proceeding on such a road. The road itself, in the condition in which it was, was an admonition of danger, and the Court does not believe that the minds of reasonable men can differ as to the fact that plaintiffs were guilty of contributory negligence as a matter of law, and that they assumed the risk of any dangerous consequence, which in this case they could easily have foreseen.

"The motions for new trial are granted and judgments will be entered by the Court for the defendant.

"Harry Adams"

Thus it appears to this Court that while the order granting the new trial after the first trial recited that it was because the verdict was against the weight and preponderance of the evidence yet His Honor, the Trial Judge, actually granted the motion for a new trial because he thought that the plaintiffs were guilty of contributory negligence as a matter of law.

We are constrained respectfully to disagree with His Honor, the Trial Judge, that all reasonable men must come to the conclusion that these two plaintiffs were guilty of proximate contributory negligence in driving

onto Milstead Street from Lynn Avenue. We think it was peculiarly a matter for the jury to determine first, whether or not the defendant was guilty of proximate negligence in failing to erect a barricade across Milstead Street which was unsuitable for traffic or in the alternative, to have put up warning signs to the public not to enter Milstead Street after they had invited the public to come into Avondale Park to inspect the homes.

Likewise, we think it was a matter for the jury to determine whether or not the plaintiff, T. M. Howell, was guilty of proximate or remote contributory negligence in entering Milstead Street or in running over the protruding top of the manhole.

■ Also, if the jury should find that the plaintiff, T. M. Howell, was guilty of contributory negligence in driving into Milstead Street or in running over the protruding top of the manhole, such negligence would not necessarily be imputed to the plaintiff, Mrs. Florence Evelyn Howell. It would still be a question for the jury whether or not she herself was guilty of proximate or remote contributory negligence.

Even though we are of the opinion that His Honor, the Trial Judge, was, in error in holding that these plaintiffs were both guilty of proximate contributory negligence as a matter of law, does it follow that we can reinstate the judgment which was entered on the verdict of the jury in the first trial? We think not.

■ The rule in this state is firmly established that the Trial Court shall exercise the function of a thirteenth juror upon hearing of a motion for a new trial; that it is his duty to weigh the evidence and independently determine therefrom whether or not it is sufficient to

sustain the verdict. McLaughlin v. Broyles, 36 Tenn. App. 391, 255 S. W. (2d) 1020, and cases cited therein.

■ The record clearly shows that the Trial Judge did not approve the verdicts because he thought the plaintiffs were both guilty of proximate contributory negligence both as a question of fact and as a question of law. We can hold him in error only to the extent that he thought that all other reasonable men must of necessity come to the same conclusion.

However, we cannot say that he was in error when he as a thirteenth juror weighed the evidence in the trial and found as a fact from a preponderance of the evidence that the plaintiffs were guilty of proximate contributory negligence. This was a matter which addressed itself to his determination and discretion and there is nothing in the record to show that he abused his discretion in arriving at the conclusion that the plaintiffs were guilty of proximate contributory negligence.

■ Being dissatisfied with the verdict of the jury, it was his duty as the thirteenth juror to set the verdict aside and grant a new trial. This is exactly what he did and we cannot hold him in error in so doing.

Therefore, all of the assignments of error relating to the action of the Trial Judge in granting a new trial at the end of the first trial are respectfully overruled.

We turn now to the assignments of error relating to the action of the Trial Judge on the second trial. On the motion for a new trial the Trial Judge not only granted the defendant a new trial but he also directed verdicts in favor of the defendant.

■ As set out above it was not necessary for the

plaintiff to file a motion for a new trial in order to preserve his exceptions to the action of the Trial Judge in granting a new trial. However, when the Trial Judge directed verdicts in favor of the defendant, the plaintiff was required to make a motion for a new trial before he could review this action of the Trial Judge in the appellate courts. Badger v. Tennessee Electric Power Co., supra, and more recently, Scott v. St. Louis-San Francisco Ry. Co., 39 Tenn. App. 534, 286 S. W. (2d) 347.

Since the plaintiff did not make a motion for a new trial, this Court has no authority to review the action of the Trial Judge in directing verdicts and entering judgments in favor of the defendant.

■ Appellate courts are generally reluctant to decide cases upon technicalities which do not go to the merits of the controversy. Particularly is this true here where the plaintiffs have recovered substantial judgments on two trials before two separate juries.

■ In addition, we add gratuitously that we see no substantial reason why a plaintiff should have to file a motion for a new trial as a prerequisite to a review by an appellate court of the action of the Trial Judge in granting a directed verdict and judgment thereon against him in the appellate court. However, the practice is so thoroughly established as a part of our Tennessee practice and procedure that we, the Court of Appeals, do not feel that we have authority to change such a rule of practice however salutary and desirable such change may appear. Such a change must be made by the Legislature or our Tennessee Supreme Court.

All of the assignments of error relating to the second

trial must respectfully be dismissed because we cannot consider the same. The appeals in each case are dismissed and the plaintiffs are taxed with the costs of these appeals.

Avery, P. J. (Western Section), and Bejach, J., concur.