EDITH PETTY ELIAS, Complainant-Appellee, v.
KASOR JOHNNY ELIAS, Defendant-Appellant.
—457 S.W.2d 612.

Western Section. December 2, 1969.

Certiorari Denied by Supreme Court April 6, 1970.

Sam Cole, Sr., Memphis, for defendant-appellant.

John M. Heiskell, Grattan Brown, Jr., Memphis, for complainant-appellee.

CARNEY, P. J. (W.S.). On May 8, 1968, the Circuit Judge of Shelby County, Tennessee, granted the complainant, Edith Petty Elias, age 46, an absolute divorce from the defendant, Kasor Johnny Elias, age 50, on the grounds of cruel and inhuman treatment. The custody of their two minor children, David Allen Elias, age 12, and Carolyn Elias, age 7, was awarded to the mother. The cross bill of the defendant was dismissed. The parties were married July 30, 1953, in Benton, Arkansas. Each had been married before. Mr. Elias has two children by the first marriage. Mrs. Elias had no children by her first marriage.

The matters of child support, alimony, and attorneys' fees were reserved by the Court and a reference ordered to a Special Master or Referee to ascertain the value of property which each party owned, their debts, annual income, etc. Exceptions were filed by both parties to the report of the Referee. Some exceptions by each party were sustained.

The final decree of His Honor the Trial Judge was as follows: (1) As alimony the complainant, Mrs. Elias, was awarded defendant's title to one-half interest in the homeplace known as 5395 Laurie Lane in Memphis, Tennessee, valued at $18,500.00 which the parties had previously held as tenants by the entirety. The complainant, Mrs. Elias, was ordered to assume and pay an indebtedness of $10,984.45 due and owing to Leader Federal Savings & Loan Association of Memphis. (2) Mrs. Elias was awarded all household goods, furnishings, equipment, and appliances located in the home as alimony. The value is not shown. (3) Mrs. Elias as further alimony was awarded defendant's one-half interest in the Long Road property (real estate) previously held as tenants by the entirety. The value of the Long Road property was set at $30,000.00 and Mrs. Elias was charged with assuming and paying off the indebtedness of $9,600.00 due and owing to the Equitable Life Assurance Society of the United States. (4) Mr. Elias was awarded Mrs. Elias' one-half interest in the Dogwood property (real estate) previously owned as tenants by the entirety. The Dogwood property was valued at $100,000.00 and Mr. Elias was ordered to pay off a loan of $34,525.68 to First National Bank of Memphis. Mr. Elias was ordered to pay Mrs. Elias $32,737.16 in cash as the value of her equity in the Dogwood property. (5) As alimony Mr. Elias was

ordered to pay Mrs. Elias an additional sum of $12,500.00 in cash plus $6,500.00 fees for the solicitors of Mrs. Elias. (6) Mr. Elias was ordered to reimburse Mrs. Elias or her solicitors $315.62 expenses of litigation. (7) Mr. Elias was ordered to pay outstanding household bills due by Mrs. Elias to various department stores and shops in Memphis totaling $3,600.00. (8) Mr. Elias was ordered to pay all the costs of Court including a fee of $250.00 to the Master, Mr. George C. Cunningham. (9) As child support, Mr. Elias was ordered to pay the sum of $430.00. per month for the support of the two minor children until the youngest reached the age of 21 years. The payments were made a charge on the estate of Mr. Elias in the event of his death or disability. (10) Mr. Elias was ordered to maintain in full force and effect and pay all premiums on policies of life insurance of an undetermined amount in which his children were named beneficiaries without changing the beneficiaries until the youngest child reached the age of 21 years and was further ordered to maintain medical and hospitalization insurance included therein until the youngest of said children reached the age of 21. (11) Some ten shares of stock in Safeway Stores, Inc. held by Mr. Elias as custodian for their son, David Allen Elias, under the Tennessee Uniform Gift to Minors Act was ordered reissued in the name of Mrs. Elias as custodian for David Allen Elias under the Tennessee Uniform Gift to Minors Act.

Mr. Elias prayed an appeal and he was ordered to pay the sum of $530.00 each month as temporary alimony and child support pending the appeal. Mr. Elias changed lawyers and his new solicitor did not have time to have prepared and signed a bill of exceptions. The record filed in this Court contains the pleadings, motions, decrees,

minute entries, report of the Master, depositions and transcript of the evidence heard by the Master.

Solicitors for appellee filed a motion in this Court to strike the assignments of error and affirm the judgment below on the ground that all of the assignments of error related to factual matters and that since there was no bill of exceptions before this Court there was a conclusive presumption that the evidence below supported the finding and decree of the lower Court, citing State ex rel. Sullivan v. Cocke, 167 Tenn. 253, 68 S.W.2d 933; Rutledge v. Rutledge, (1953), 41 Tenn.App. 158, 163, 165, 293 S.W. 2d 21. Argument was had upon the motion in open Court but decision thereon was reserved. Later the cause was argued before the Court upon its merits, namely the assignments of error and the reply brief of appellee filed thereto.

■ Appellate courts are reluctant to dismiss appeals upon technicalities and without a decision on the merits. Howell v. Wallace E. Johnson, Inc., 42 Tenn.App. 15, 298 S.W.2d 753.

The Trial Judge heard oral testimony relating to the $6,500.00 fee awarded to solicitors for the complainant. The testimony considered by the lower Court relating to the financial status of the complainant and the defendant, their respective net worths, and their respective annual earnings, etc. was confined to the testimony before the Master. Part of the evidence before the Master was by deposition and part by oral evidence. The oral testimony was transcribed in question and answer form and filed with the Clerk of the Court along with the depositions and the Master's report. The transcript of the oral evidence heard by the Master was not identified by the

signature of the Trial Judge but merely copied by the Clerk in the transcript before this Court.

A bill of exceptions was necessary to preserve the testimony heard by the Master and considered by the Trial Judge even though the oral testimony was transcribed in question and answer form and filed with the Clerk along with the depositions. Since the testimony was not identified by the Trial Judge, it cannot be considered by this Court on this appeal. Rose v. Brown, 176 Tenn. 429, 143 S.W.2d 303. Without a bill of exceptions only the technical record is before this Court. Johnson v. Johnson, 185 Tenn. 400, 405, 206 S.W.2d 400. The report of the Special Master, the finding of the Court and final decree are parts of the technical record and must be considered by this Court on this appeal. The finding by the Trial Judge was in considerable detail.

Assignment of error No. I insists that the Trial Judge erred in failing to sustain appellant's exception No. 1 to the Master's report that an indebtedness of $41,530.70 due and owing to the Union Planters National Bank constituted a lien on real estate. The Trial Judge stated in his findings that he was considering this item of $41,530.70 in arriving at the net worth of the defendant. We see no prejudice to the defendant and assignment of error No. I is overruled.

Assignment of error No. II complains of the action of the Trial Judge sustaining an exception to report of the Master and holding as assets of the defendant $72,500.00 paid by the defendant to his brother. Defendant contended said funds were repayment of a loan. There being no bill of exceptions there is a conclusive presumption that the lower Court's findings and decree

on this question were correct. Spivey v. Reasoner, 191 Tenn. 350, 233 S.W.2d 555. Therefore, assignment of error No. II is respectfully overruled.

■ Assignment of error No. V complains of the award of $6,500.00 as fees to the complainant's—appellee's solicitors is excessive. This assignment of error must be overruled for the same reason given under assignment of error No. II.

■ By assignment of error No. IV the appellant insists that the child support award of $430.00 per month for the two minor children, ages 12 and 7 years respectively, is excessive in view of the fact that their mother was awarded title to the homeplace. The defendant-appellant has an annual income over several years ranging from $44,000.00 down to $32,000.00 as principal owner and salesman of the Beltone Hearing Aid Company. Absent a bill of exceptions we cannot say that the judgment of the lower Court is erroneous upon the face of the technical record. Therefore, assignment of error No. IV is respectfully overruled.

Assignment of error No. III insists that the award of alimony made by the Trial Judge to complainant-appellee is excessive and exhorbitant and in effect denudes the defendant of nearly all of his property.

The Trial Court found that Mrs. Elias had on hand cash in the amount of $6,375.00, the major portion of which came to her outside the marriage relationship. She owed bills around the City of Memphis totaling $3,600.00. Mr. and Mrs. Elias held title to three tracts of land as tenants by the entirety including their home with a total value of $148,500.00 against which there were real estate liens of $55,000.00. The value of their equity in the three

parcels of land held by the entireties was approximately $94,000.00. The defendant had paid for these equities and Mrs. Elias had received her one-half interest by virtue of the marriage.

The Trial Judge found that Mr. Elias had the following other assets, debts, and net worth:

I. ASSETS:
| | | | |
|---|---|---:|---:|
| (1) | Florida real estate equity | $   409.30 | |
| (2) | Cash in the hands of his brother | 72,480.00 | |
| (3) | Securities | 8,036.50 | |
| (4) | Pension benefits accrued with Beltone Hearing Aid Co. | 18,063.00 | |
| | Total | | $98,988.80 |

II. DEBTS:
| | | | |
|---|---|---:|---:|
| (1) | Beltone Hearing Aid Company | 400.00 | |
| (2) | Beuhl Kent Note | 25,000.00 | |
| (3) | James Elias (Brother) | 9,000.00 | |
| (4) | Union Planters National Bank, Memphis | 41,530.70 | |
| (5) | New England Life Insurance Co. | 125.33 | |
| (6) | Mrs. Elias' bills | 3,600.00 | |
| | Total | | 79,656.03 |

III. NET WORTH:
Over and beyond equity in jointly held realty_____ $19,322.77

Only under unusual circumstances do the courts allow more than one-half of a husband's property to the wife as alimony. Rush v. Rush, 33 Tenn.App. 496, 232 S.W.2d 333.

T.C.A. Section 36-825 provides as follows:

"36-825. *Adjustment of interests in jointly owned property.*—In all actions for divorce or separate support and maintenance, the court having jurisdiction thereof may, in its discretion, adjust and adjudicate the respective rights and interests of the parties in all jointly owned property, so as to preserve for each or either party, that portion of such jointly owned prop-

erty as may be just and reasonable under the facts and circumstances of the case, regardless of how the court may grant or refuse to grant relief in such case; and to this end the court shall be empowered to effectuate its decree by divesting and reinvesting title to such property and, where deemed necessary, to order a sale of such property and to order the proceeds divided between the parties. (Acts 1953, ch. 90, sec. 1 (Williams, sec. 8446) ; 1959, ch. 192, sec. 1.) "

■■■ One of the primary purposes for the enactment of Chapter 90, Acts 1953, by the Legislature was to prevent the unjust enrichment of the wife in divorce cases where title to real estate paid for by the husband had been taken in the joint names of husband and wife. Grant v. Grant, (1954), 39 Tenn.App. 539, 286 S.W.2d 349. By the amendment of 1959 the act broadened the powers of the courts to achieve justice and equitably adjust the rights of parties in jointly owned property in divorce cases.

Excluding the $6,375.00 in cash, most of which came to Mrs. Elias outside the marriage, the combined net worth of the complainant and defendant amounted to roughly $113,322.00. After deducting the $6,500.00 attorneys' fee allowed the complainant's attorneys and $315.62 litigation expense there remained a net worth of $106,506.38 to be divided between complainant and defendant. Under the decree of the lower Court the complainant was awarded a total of $73,142.71 plus the $6,375.00 in cash which did not come to her out of the marital relationship. She also received the household appliances, furnishings, fixtures, etc. in the home plus $6,815.00 attorneys' fees and litigation expenses.

Under the lower Court's decree the defendant was awarded total assets of $164,463.12 and required to pay debts, alimony, and attorneys' fees totaling $135,308.81 leaving him a net worth of only $29,154.31.

This is the second marriage for each of these parties; the defendant-appellant is now past 50 years of age; he is obligated to pay child support for two minor children totaling $430.00 per month until the youngest has reached 21 years of age, also an undetermined amount for his two children by another marriage; defendant is obligated to keep in force life insurance of an undetermined amount for the benefit of his and complainant's two minor children and Mrs. Elias is required to keep one policy in force for one of the children.

It further appears that of the $29,154.31 equity remaining to Mr. Elias $18,000.00 is represented by pension benefits in the Beltone Hearing Aid Company which have not fully matured and which may be lost if the defendant's health requires him to move to another climate. The Trial Judge mentioned that this was a possibility. There is nothing in the pleadings or in the findings by the Trial Judge to indicate that the complainant, Mrs. Elias, is not in good health and no allegation by the parties or finding by the Trial Judge of exceptional circumstances entitling the complainant to more than two-thirds of the property which the defendant had accumulated.

We hold that on the technical record the award to the complainant was excessive and that the complainant's portion of the property accumulated by the defendant should not be more than one half of the net accumulation of $106,506.38 or approximately $53,250.00.

Under the decree below she received $73,000.00 plus household goods, etc. and attorneys' fees.

We hold that the award by the Court below is excessive by $20,000.00 and the amount of cash money to be paid by the defendant to the complainant will be reduced by $20,000.00. In all other respects the decree of the lower Court will be affirmed. Assignment of error No. III is sustained and the cause will be remanded to the lower Court for the enforcement of the decree. The costs in the Court below and in this Court will be taxed against the defendant-appellant, Mr. Elias.

Matherne and Taylor, JJ., concur.