IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs May 1, 2018

IN RE D.T.

**Appeal from the Juvenile Court for Bradley County**
**No. J-13-518        Daniel R. Swafford, Judge**

_____

**No. E2017-02098-COA-R3-PT**

_____

In this termination of parental rights case, the Department of Children's Services filed a petition to terminate the rights of R.T. with respect to his child, D.T.[1] At trial, DCS alleged a single ground for termination: persistence of conditions. The court found clear and convincing evidence. By the same quantum of proof, the court also found that termination is in the child's best interest. Father appeals. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court**
**Affirmed; Case Remanded**

CHARLES D. SUSANO, JR., J., delivered the opinion of the court, in which RICHARD H. DINKINS, and KENNY W. ARMSTRONG, JJ., joined.

Jonathan Wilson, Cleveland, Tennessee, for the appellant, R.T.

Herbert H. Slatery, III, Attorney General and Reporter, and Erin Shackelford and Kathryn Baker, Assistant Attorneys General, Nashville, Tennessee, for the appellee, Tennessee Department of Children's Services.

**OPINION**

**I.**

The mother of the child is a user of methamphetamine. On August 15, 2014, as a result of allegations regarding mother's drug use, DCS took custody of the child. The mother was provided with a no-contact order. Pursuant to the order, she was not to

_____

[1] Mother surrendered her parental rights before the termination hearing.

interact with the child until she completed her permanency plan and submitted a clean hair follicle drug screen. DCS made efforts to render father a suitable placement. After efforts from both father and DCS, on April 25, 2015, the child was placed in the father's care for a trial home placement period. On July 25, 2015, custody of the child was placed with father.

Mother violated the no-contact order on two documented occasions. First, on September 27, 2015, mother came to a public park where father and the child's family were having a birthday party. Mother was asked to leave. Second, on October 21, 2015, father took mother to her probation officer appointment. Father allowed mother to take the child with her to the appointment. Mother tested positive for methamphetamine and amphetamine at the appointment.

DCS received a referral alleging a drug-exposed child. The child was subsequently removed from father's care based upon allegations that he failed to protect the child from the mother, and that he failed to follow the court's no-contact order. The father alleges that he did not know the no-contact order was still in effect at the time of the probation appointment. He maintains that, even during the appointment, the child never left his sight. On November 24, 2015, the child was adjudicated dependent and neglected. The termination petition was filed on January 31, 2017.

Discussion regarding the condition of father's home was heard by the trial court; however, DCS did not allege environmental neglect in its petition for termination. DCS admitted that the home's condition would not rise to a level warranting removal.

Father completed all steps of his permanency plan. Father maintains that he will not allow the mother to be around the child. However, the veracity of this contention is questionable based upon his testimony at the termination hearing. Father testified that he believes his son has a right to see his mother. He testified that he helps mother with efforts to address her drug problem. He allows mother to enter his home to do laundry, take a shower, or stay the night when it's raining or cold outside. Father remains mother's means of transportation from time-to-time. DCS contacts father to reach mother, as he purportedly often knows her whereabouts. Mother indicated father as her transportation plan on her permanency plan and listed his address as her contact for DCS. At some point when the no-contact order was still in place, Mother sought permission to move in next door to father's residence. In essence, mother appears to still rely upon father and interact with him. Father has ultimately failed to demonstrate a definitive willingness to remove mother from his and the child's lives pending mother's ability to stop using drugs.

## II.

Two issues are presented for our review by father:

-2-

Whether the Juvenile Court erred in holding that the State of Tennessee had proven persistence of conditions by clear and convincing evidence.

Whether the Juvenile Court erred in holding that the State of Tennessee had shown by clear and convincing evidence that termination of father's parental rights was in the best interest of the child.

DCS raises an additional issue, as taken verbatim from its brief: whether the notice of appeal was properly filed. As DCS's issue is a threshold issue, we dispose of it first.

**III.**

A parent has a fundamental right, based on both the federal and state constitutions, to the care, custody, and control of his or her child. *Stanley v. Ill.*, 405 U.S. 645, 651 (1972); *In re Angela E.*, 303 S.W.3d 240, 250 (Tenn. 2010); *Nash-Putnam v. McCloud*, 921 S.W.2d 170, 174-75 (Tenn. 1996). While this right is fundamental, it is not absolute. The State may interfere with a parent's rights in certain circumstances. *In re Angela E.*, 303 S.W.3d at 250. Our legislature has listed the grounds upon which termination proceedings may be brought. Tenn. Code Ann. § 36-1-113(g)(2018). Termination proceedings are statutory, *In re Angela E.*, 303 S.W.3d at 250; *Osborn v. Marr*, 127 S.W.3d 737, 739 (Tenn. 2004), and a parent's rights may be terminated only where a statutory basis exists. *Jones v. Garrett*, 92 S.W.3d 835, 838 (Tenn. 2002); *In the Matter of M.W.A., Jr.*, 980 S.W.2d 620, 622 (Tenn. Ct. App. 1998).

To terminate parental rights, a court must determine by clear and convincing evidence the existence of at least one of the statutory grounds for termination and that termination is in the child's best interest. Tenn. Code Ann. § 36-1-113(c); *In re Valentine*, 79 S.W.3d 539, 546 (Tenn. 2002). "Clear and convincing evidence enables the fact-finder to form a firm belief or conviction regarding the truth of the facts, and eliminates any serious or substantial doubt about the correctness of these factual findings." *In re Bernard T.*, 319 S.W.3d 586, 596 (Tenn. 2010) (citations omitted). Unlike the preponderance of the evidence standard, "[e]vidence satisfying the clear and convincing standard establishes that the truth of the facts asserted is highly probable." *In re Audrey S.*, 182 S.W.3d 838, 861 (Tenn. Ct. App. 2005).

Once a ground for termination is established by clear and convincing evidence, the trial court conducts a best interest analysis. *In re Angela E.*, 303 S.W.3d at 251 (citing *In re Marr*, 194 S.W.3d 490, 498 (Tenn. Ct. App. 2005)). "The best interest[ ] analysis is separate from and subsequent to the determination that there is clear and convincing evidence of grounds for termination." *Id.* at 254. The existence of a ground for termination "does not inexorably lead to the conclusion that termination of a parent's

rights is in the best interest of the child." ***In re C.B.W.***, No. M2005-01817-COA-R3-PT, 2006 WL 1749534, at *6 (Tenn. Ct. App., filed June 26, 2006).

We are required to review all of the trial court's findings with respect to grounds and best interest. ***In re Carrington***, 483 S.W.3d 507, 525-26 (Tenn. 2016) ("[W]e hold that in an appeal from an order terminating parental rights the Court of Appeals must review the trial court's findings as to each ground for termination and as to whether termination is in the child's best interest[ ], regardless of whether the parent challenges these findings on appeal.")

The Supreme Court has stated our standard of review:

> An appellate court reviews a trial court's findings of fact in termination proceedings using the standard of review in Tenn. R. App. P. 13(d). Under Rule 13(d), appellate courts review factual findings de novo on the record and accord these findings a presumption of correctness unless the evidence preponderates otherwise. In light of the heightened burden of proof in termination proceedings, however, the reviewing court must make its own determination as to whether the facts, either as found by the trial court or as supported by a preponderance of the evidence, amount to clear and convincing evidence of the elements necessary to terminate parental rights. The trial court's ruling that the evidence sufficiently supports termination of parental rights is a conclusion of law, which appellate courts review de novo with no presumption of correctness. Additionally, all other questions of law in parental termination appeals, as in other appeals, are reviewed de novo with no presumption of correctness.

***Id.*** at 523-24 (internal citations omitted). "When a trial court has seen and heard witnesses, especially where issues of credibility and weight of oral testimony are involved, considerable deference must be accorded to . . . the trial court's factual findings." ***In re Adoption of S.T.D.***, No. E2007-01240-COA-R3-PT, 2007 WL 3171034, at *4 (Tenn. Ct. App., filed Oct. 30, 2007) (citing ***Seals v. England/Corsair Upholstery Mfg. Co., Inc.***, 984 S.W.2d 912, 915 (Tenn. 1999)).

Furthermore, in this appeal, the existence of subject matter jurisdiction is raised. A determination of subject matter jurisdiction involves questions of law to which de novo review applies on appeal. ***Johnson v. Hopkins***, 432 S.W.3d 840, 844 (Tenn. 2013).

**IV.**

As a preliminary matter, we must determine whether or not this matter is properly before this Court on appeal. As is pertinent to this issue:

> Effective July 1, 2017, Rule 4(a) is amended to require that the notice of appeal be filed with the appellate court clerk, instead of the trial court clerk. In the event a party, on or after July 1, 2017, incorrectly attempts to file a notice of appeal with the trial court clerk, the trial court clerk shall note the date and time of receipt of the attempted filing and shall immediately notify the party attempting to file the notice of appeal that the notice must be filed with the appellate court clerk. If the attempted filing of the notice of appeal with the trial court clerk was received by the trial court clerk within 30 days after the date of entry of the judgment, the party attempting to file the notice with the trial court clerk shall have 20 additional days, counting from the 30th day after the date of entry of the judgment, within which to file the notice of appeal with the appellate court clerk; a notice of appeal filed with the appellate court clerk during the additional period allowed by this transitional provision shall be deemed to have been timely filed.

Tenn. R. App. P. 4(a).

In civil cases, the failure to timely file a notice of appeal deprives the appellate court of jurisdiction to hear the appeal. *McGaugh v. Galbreath,* 996 S.W.2d 186, 189 (Tenn. Ct. App. 1998); *American Steinwinter Investor Group v. American Steinwinter, Inc.,* 964 S.W.2d 569, 571 (Tenn. Ct. App. 1997). If the notice of appeal is not timely filed, the appellate court is required to dismiss the appeal.

Father initially failed to file his appeal with the proper court. On August 30, 2017, the order terminating father's parental rights was filed. Father had thirty days to file his notice of appeal. Pursuant to Tenn. R. App. P. 4(a), the appeal was to be filed with the appellate court clerk. On September 29, 2017, and despite the fact that the trial court that heard the matter was the Bradley County Juvenile Court, father inadvertently filed his notice of appeal with the Bradley County Circuit Court.

DCS moved to dismiss the appeal. Father's counsel, upon realizing the error, relied upon the twenty-day extension in Tenn. R. App. P. 4(a), and re-filed his appeal with the appellate court clerk, on October 19, 2017. This Court, in an order filed November 6, 2017, waived any defects in the form of the notice of appeal and considered

the appeal to have been timely filed in accordance with the transitional provision of Rule 4(a). DCS petitioned to have the November 6, 2017 order revisited. On December 4, 2017, this Court denied DCS's request without prejudice to the ability of DCS to raise the jurisdictional issue in its responsive brief. Accordingly, DCS in its brief argues that this appeal should be dismissed on the grounds that this Court lacks subject-matter jurisdiction to hear the appeal.

At the outset, this Court notes that "[w]e prefer to decide all cases on the merits and construe our rules liberally to effect such result." *Greer v. Anderson*, 36 Tenn. App. 507, 509, 259 S.W.2d 550, 550 (1953). Appellate courts are reluctant to dismiss appeals upon technicalities and without a decision on the merits. *Elias v. Elias*, 61 Tenn. App. 692, 697, 457 S.W.2d 612, 615 (1969) (citing *Howell v. Wallace E. Johnson*, Inc., 42 Tenn. App. 15, 298 S.W.2d 753).

The transitional provision of Rule 4(a) by its plain language provides a degree of protection to parties for inadvertently filing a notice of appeal in the wrong court. This is in essence the present circumstance. Rule 4(a) preserves the right to appeal despite such an error.

We note that father's counsel was not derelict in his efforts to provide a timely notice of appeal. His notice was timely; it was a timely notice to the wrong court. He rectified his error within the extension permitted. DCS would have us dismiss this appeal based upon father's failure to file his notice of appeal "with the trial court." DCS maintains that father is not entitled to the twenty-day extension due to his error. Given the profound interests and consequences at stake surrounding the termination of parental rights, we find that Rule 4(a), in light of the transitional provision, directs us to hold that the notice of appeal is timely, despite a technical error. Hence, because the appeal was timely filed, this Court has subject-matter jurisdiction.

## V.

"Persistence of conditions," as this ground for termination of parental rights is commonly referred to, will provide a basis for terminating a parent's parental rights when: the conditions that led to the child's removal still persist preventing the child's safe return to the care of the parent, there is little likelihood that these conditions will be remedied at an early date, and the continuation of the parent child relationship greatly diminishes the child's chances of integrating in a safe, stable, and permanent home. *See* Tenn. Code Ann. § 36-1-113(g). The child must have been removed from the home or the physical or legal custody of a parent/guardian for a period of six (6) months by a court order entered following a petition alleging that the child is a dependent and neglected child. *See Id*.

The trial court found that the child's second custodial episode began on or about October 21, 2015 and continued uninterrupted until the date of the hearing on May 22, 2017. An adjudicatory order deeming the child neglected and dependent was entered on November 24, 2015. The trial court determined that father made his "best effort to address the issues preventing his home being a safe and caring environment for the child, unfortunately, he has failed." After a careful review of the record, we hold that the evidence does not preponderate against the trial court's determination.

The conditions that led to the child's removal still persist. Father has admitted to maintaining a relationship with the methamphetamine-addicted mother. As outlined above, father's own testimony indicates that he still does not fully understand and/or appreciate the no-contact order entered by the court. Father has admitted to violating the no-contact order. He has admitted to allowing the mother to have contact with the child at times when she tested positive for methamphetamine. Mother and father have a continuing relationship to which father testified. As the trial court noted "[b]oth of the times the child has entered the custody of the Department have directly resulted from the mother's drug use and both occurred during the continuing relationship between the mother and [father]." Because of mother and father's continued relationship, there is little chance that these conditions will be remedied at an early date so that the child can be safely placed in father's custody. Therefore, continuation of the parent/child relationship will greatly diminish the child's chances of being placed into a safe, stable, and permanent home.

We hold, as a matter of law, that the evidence found by the trial court amounts to clear and convincing evidence supporting termination of father's parental rights based on persistent conditions.

## VI.

We now focus on whether termination is in the child's best interest. When considering the issue of "best interest," we are guided by the following statutory factors set forth in Tenn. Code. Ann. § 36-1-113(i). The list found therein is not exhaustive, and there is no requirement that all of the factors be present before a trial court can determine that termination of parental rights is in a child's best interest. *State Dep't of Children's Servs. v. B.J.N.*, 242 S.W.3d 491, 502 (Tenn. Ct. App. 2007) (citing *State Dep't of Children's Servs. v. P.M.T.*, No. E2006- 00057-COA-R3-PT, 2006 WL 2644373, at *9 (Tenn. Ct. App., filed Sept. 15, 2006)). In addition, "[t]he child's best interest must be viewed from the child's, rather than the parent's, perspective." *In re Marr*, 194 S.W.3d 490, 499 (Tenn. Ct. App. 2005) (citing *White v. Moody*, 171 S.W.3d 187, 194 (Tenn. Ct. App. 2004)).

The father is either unable or unwilling to adjust his circumstances such that he can keep mother away from the child until she stops abusing drugs. To the father's credit,

he has maintained regular visitation with the child. However, it does not appear that he has a meaningful relationship with the child. The child appears to have bonded with his foster parents. He has been with his pre-adoptive placement family for over two years, and refers to them by terms including "momma" and "daddy." The trial court found the pre-adoptive mother's testimony as to the child's bond with her and her desire for the child's well-being to be credible.

The trial court did not find the father's testimony that he will keep the mother away from the child until she addresses her drug issues credible. For the reasons noted above, we do not either. Therefore, there remain serious concerns regarding the environment the child would be entering should father obtain custody. The environment would likely have a negative impact on the child's emotional, psychological, and medical condition. The list of dangers from methamphetamine exposure and the dangerous environment surrounding its users abounds. This is the lifestyle of the mother. The fact that the father cannot or will not ensure no-contact between the mother and the child creates a persisting danger to the child.

Accordingly, we hold, as a matter of law, that the evidence found by the trial court to be credible amounts to clear and convincing evidence that termination of father's parental rights is in the child's best interest.

## VII.

The judgment of the trial court is affirmed. The costs on appeal are assessed to the appellant R.T. This case is remanded for enforcement of the trial court's judgment and for collection of costs assessed by the trial court.

_____
CHARLES D. SUSANO, JR., JUDGE